## 23072

The STATE, Respondent v. Ada L. TOMLIN, Appellant.

(384 S. E. (2d) 707)

Supreme Court

*Philip J. Mace*, Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Atty. Gen. Harold M. Coombs, Jr.,* and *Sol. James C. Anders*, Columbia, *for respondent.*

Heard May 1, 1989.

Decided Sept. 5, 1989.

TOAL, Justice:

The sole issue in this case involves the State's use of its peremptory challenges. Tomlin, a black woman, was charged with driving under the influence (second offense). During jury selection, the State exercised four of its peremptory challenges to strike black jurors and one to strike a white juror. Tomlin moved to dismiss the jury and for a mistrial under *Batson v. Kentucky*, 476 U. S. 79, 106 S. Ct. 1712, 90 L. Ed. (2d) 69 (1986), on the ground that the State used its

peremptory challenges in a racially discriminatory manner. Although the Court questioned whether Tomlin had met its burden for a *prima facie* case under *Batson*, the Court directed the State to explain its reasons for striking the jurors. The State did not object and a *Batson* hearing was conducted.

The State struck one black woman, Ms. Prelau, on the grounds that she walked slow, talked low and was somewhat aged. The Solicitor noted that the previous time this case was tried, it took five hours to try it and seven hours for jury deliberations. He stated that he had doubts as to whether she would be able to withstand the trial and jury deliberation and be aware of what was going on.

The Court responded as follows:

> I was aware when she came up. I don't know whether she's lack of learning or education. I don't know. But I noticed that she was extremely sluggish. I believe that if she sat on the jury she'd be what I call a filler. I don't believe—she didn't respond in a way—I don't know. I have not looked at what her education is, but let's see what—let's go over them all.

Defense counsel noted to the court that this juror was only 43 years old.

The State also struck a black man, Mr. William Gordon. The Solicitor gave the following explanation for striking this juror:

> From my information, has that one, he is unemployed. I watched him as he walked from the jury panel to the microphone and I have noted that he—*he shucked and jived* is what I had. That's just my analysis of the way he walked up here. He seemed disinterested. He started speaking before he even got to the microphone, Your Honor. He was looking down at the ground as he was giving the jury information. (Emphasis added.)

The judge ruled that no pattern of racial discrimination was established and that the justifications articulated by the prosecutor were racially neutral.

## DISCUSSION

*Prima Facie Case of Discrimination*

Tomlin contends that the trial judge erred in failing to find that Tomlin had established a *prima facie* showing of racial discrimination.

*Batson* prohibits the State from exercising its peremptory strikes in a racially discriminatory manner. Under *Batson*, the trial judge is vested with discretion to determine whether a *prima facie* case of discrimination against black jurors has been established based upon all relevant circumstances concerning the exercise of the State's peremptory challenges. *State v. Smith*, 293 S. C. 22, 358 S. E. (2d) 389 (1987).

A *prima facie* case is established when the defendant shows that he is a member of a "cognizable racial group," that the prosecutor has exercised peremptory challenges to remove veniremen of the defendant's race, and that the facts and circumstances raise an inference that the prosecutor used his peremptory challenges for the purpose of striking minorities. If a *prima facie* case is established, the state must come forward with a "neutral explanation for challenging black jurors." *Batson*, 476 U. S. at 97, 106 S. Ct. at 1723, 90 L. Ed. (2d) at 88.

In the absence of the finding of a *prima facie* case of discrimination, the trial judge has no duty to hold a *Batson* hearing. *State v. Jones*, 293 S. C. 54, 358 S. E. (2d) 701 (1987). This Court, however, has recommended that the better practice is for trial courts to hold a *Batson* hearing out of the jury's presence (1) at the defendant's request, (2) when the defendant is a member of a cognizable racial group, and (3) when the State has exercised peremptory challenges to remove members of the defendant's race. *Jones*, 358 S. E. (2d) at 703.

Here, the trial judge did not make a specific finding concerning the establishment of a *prima facie* case. He stated that he had some question as to whether the burden had been met, but that "out of an abundance of caution [he would] ask the State to explain the four strikes."

Therefore, Tomlin has not been prejudiced by the trial court's failure to make a specific finding that a *prima facie* case had been established. If such a finding had been made, the court would have been required to conduct a *Batson* hearing. Instead, the court conducted a hearing notwithstanding the fact that the establishment of a *prima facie* case was not determined. Tomlin would not have received any further relief if such finding had been made. Therefore, this issue is without merit.

### Explanations for Peremptory Challenges

Tomlin also contends that the trial judge erred in finding that the State articulated racially neutral explanations for its peremptory challenges against Prelau and Gordon. We agree.

To rebut a defendant's *prima facie* case of discrimination, *Batson* requires that the explanation be (1) neutral, (2) related to the case to be tried, (3) clear and reasonably specific, and (4) legitimate. Although the explanation does not have to rise to the level of justifying exercise of a challenge for cause, the prosecutor may not merely state that it was his intuitive judgment that the juror would be partial because of his shared race with the defendant or by merely denying that he had a discriminatory motive. *Batson,* 106 S. Ct. at 1712.

In addition, *Batson* implies that the trial court has the right to examine the legitimacy of the explanations. Other jurisdictions have outlined factors that may be used by the trial court in assessing the legitimacy of the explanations. *See e.g., State v. Butler,* 731 S. W. (2d) 265 (Mo. App. 1987). Examples include the following: (1) the susceptibility of the particular case to racial discrimination; (2) the prosecutor's demeanor; (3) whether similarly situated white jurors were struck on comparable grounds; and (4) whether the explanation relates to the specific juror and the case to be tried. *Butler,* 731 S. W. (2d) at 269.

In this case, the prosecutor stated that he struck Ms. Prelau, a 43 year old black woman because she walked slow, talked low and might not be able to withstand the trial. Rather than inquiring into the legitimacy of this explanation, the trial court suggested that Ms. Prelau had a lack of education, was extremely sluggish and that she would be a

"filler" if seated on the jury. We conclude that the use of such racial stereotypes violates the mandates of *Batson.*

In regard to Mr. Gordon, the prosecutor supplied several explanations for striking this juror: (1) he was unemployed; (2) he " shucked and jived" to the microphone; (3) he seemed disinterested, he started speaking before he got to the microphone, and he looked down as he spoke. Unemployment has been upheld as a race neutral explanation. *State v. Martinez,* 294 S. C. 72, 362 S. E. (2d) 641 (1987). In addition, demeanor has been upheld by many jurisdictions as a legitimate reason. *See e.g., Lockett v. State,* 517 So. (2d) 1346 (Miss. 1987) and cases cited therein. It is the second explanation that is troublesome.

The trial court failed to inquire into or comment on the prosecutor's explanation that the juror was struck because he "shucked and jived." The use of this racial stereotype is evidence of the prosecutor's subjective intent to discriminate and clearly violates the mandates of *Batson.*

Reversed.

GREGORY, C. J., and HARWELL, CHANDLER and FINNEY, JJ., concur.