23535

The STATE, Respondent v. James WILDER, Appellant.

(413 S.E. (2d) 323)

Supreme Court

*Assistant Appellate Defender Lesley M. Coggiola, of South Carolina Office of Appellate Defense, Columbia, for appellant.*

*Attorney General T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr., and Norman Mark Rapoport, Columbia, and Sol. Charles Molony Condon, Charleston, for respondent.*

Heard Oct. 30, 1991; Decided Dec. 16, 1991.

Reh. Den. Feb. 4, 1992.

CHANDLER, Justice:

Appellant James Wilder (Wilder) appeals his conviction for forgery. We affirm.

## FACTS

Wilder was initially arrested by the Charleston County police on five counts of forgery. At the bond hearing, he invoked his sixth amendment right to counsel and the public defender was appointed to represent him. Bond was set at $5,000 per charge and, because Wilder could not pay this amount, he was returned to jail.

Nine days later, a detective with the Charleston City Police Department transported Wilder from the county jail to the city jail for questioning about a separate incident of forgery which occurred on June 6, 1990. After being properly advised, Wilder waived his *Miranda*[1] rights, and confessed to the June 6 forgery. His statement was admitted over objection.

At trial, Wilder, who is black, objected to the State's use of its peremptory challenges to strike four blacks from the venire. The Solicitor struck two of the blacks on the ground they had criminal records; the other two were struck because they reported late for jury duty. He explained: "Just out of respect for the Court proceedings, if they are going to be late I just assume [sic] they not participate on the jury."

Wilder's counsel then noted that a white woman, the jury forelady, was seated even though she also reported late. The Solicitor responded that the forelady "overcame that [lateness] by expressing her intense desire to serve."[2] The trial judge accepted this explanation and held the strike to be racially neutral.

## ISSUES

(1) Was Wilder's statement admissible?

(2) Did the State's use of peremptory strikes violate *Batson v. Kentucky?*[3]

---

[1] 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. (2d) 694 (1966).

[2] The trial judge told the venire that if anyone was over the age of 65 they could be excused. The forelady, age 74, stated that she did not want to be excused and was "here to serve at the pleasure of the court."

[3] 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. (2d) 69 (1986).

## DISCUSSION

### A. *Wilder's Statement*

Wilder contends that, because he had invoked his right to counsel at the bond hearing on the initial five counts of forgery, his uncounseled statement taken in connection with the June 6 forgery should have been suppressed. We disagree.

This issue was recently addressed by the United States Supreme Court in *McNeil v. Wisconsin*, — U.S. —, 111 S. Ct. 2204, 115 L. Ed. (2d) 158 (1991). In *McNeil*, the defendant, arrested for armed robbery, invoked his sixth amendment right to counsel during his bail hearing. Subsequently, he was questioned concerning a murder, not related to the armed robbery. After being advised of his *Miranda* rights, he gave a full account of his involvement in the murder.

Like Wilder, McNeil argued his statement should have been suppressed, in that "his courtroom appearance with an attorney for the [first] crime constituted an invocation of the *Miranda* right to counsel, and that any subsequent waiver of that right during police-initiated questioning regarding *any* offense was invalid." — U.S. at —, 111 S. Ct. at 2207, 115 L. Ed. (2d) at 166.

The Court disagreed, distinguishing the sixth amendment right to counsel in judicial proceedings from the fifth amendment *Miranda-Edwards* right to counsel in a custodial setting. The sixth amendment right to counsel is offense-specific, so that "[i]t cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced. . . ." — U.S. at —, 111 S. Ct. at 2207, 115 L. Ed. (2d) at 166-67.

On the other hand, the fifth amendment right "is *not* offense-specific: once a suspect invokes the Miranda right to counsel for interrogation regarding one offense, he may not be reapproached regarding *any* offense unless counsel is present." — U.S. at —, 111 S. Ct. at 2208, 115 L. Ed. (2d) at 168.

Accordingly, the invocation of the sixth amendment right to counsel that attaches at a judicial proceeding, such as a bond hearing, does not evolve into a *Miranda-Edwards* request for counsel during custodial interrogations on a separate charge. "To invoke the Sixth Amendment interest is, as a matter of *fact*, *not* to invoke the Mi-

randa-Edwards interest. One might be quite willing to speak to the police without counsel present concerning many matters, but not the matter under prosecution." — U.S. at —, 111 S. Ct. at 2209, 115 L. Ed. (2d) at 168.

Here, Wilder's sixth amendment right to counsel attached at the initial bond hearing relative the first five forgeries. However, invocation of this right was offense-specific and did not extend to the June 6 forgery for which he was convicted. Wilder never requested counsel during the custodial interview; indeed, he explicitly waived all fifth amendment protection. Under *McNeil*, his constitutional rights were not infringed, and his statement was properly admitted at trial.

### B. *Batson Motion*

It is well settled that *Batson* proscribes the State from exercising its peremptive strikes in a racially discriminatory manner. In analyzing *Batson* issues, the Court has adopted a three-step inquiry:

> First, the defendant must make a prima facie showing that the Solicitor exercised such challenges on the basis of race. Second, if the requisite showing is made, the burden shifts to the Solicitor to articulate a race-neutral explanation for the strikes in question. Third, the trial court must determine whether the defendant has met his burden of proving purposeful discrimination.

*State v. Green*, — S.C. —, —, 409 S.E. (2d) 785 (1991) [citing *Hernandez v. New York*, 500 U.S. —, 111 S. Ct. 1859, 114 L. Ed. (2d) 395 (1991)].

It is within the discretion of the trial judge to determine purposeful discrimination based on the "totality of relevant facts," including the credibility of the solicitor. *Id.*

A Solicitor may strike veniremen based on their demeanor and disposition. *State v. Wright*, — S.C. —, 405 S.E. (2d) 825 (1991). Here, the forelady's expressed willingness to serve on the jury overrode the Solicitor's concern that veniremen who come in late convey disrespect for the court. Based on the "totality of relevant facts" surrounding the *Batson* hearing, we find no purposeful discrimination on the part of the State. The Solicitor's strikes were racially neutral.

Accordingly, Wilder's conviction is

Affirmed.

GREGORY, C.J., and HARWELL, FINNEY and TOAL, JJ., concur.

