2379

The STATE, Respondent v. Michael Jerrod GILL, Appellant.

(460 S.E. (2d) 412)

Court of Appeals

*Chief Atty. Daniel T. Stacey* and *Deputy Chief Atty. Joseph L. Savitz, III,* both of *South Carolina Office of Appellate Defense,* Columbia, *for appellant.*

*Attorney Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Senior Asst. Atty. Gen. Harold M. Coombs, Jr.,* and *Asst. Atty. Gen. Rakale Buchanan Smith,* Columbia; and *Solicitor Thomas E. Pope,* York, *for respondent.*

Heard Mar. 7, 1995.

Decided July 17, 1995; Reh. Den. Aug. 28, 1995.

HOWELL, Chief Judge:

Michael Gill appeals from his convictions for distribution of crack cocaine and distribution of crack cocaine within proximity of a park. We affirm.

## I.

In November 1991, the South Carolina Law Enforcement Division (SLED) was working with the Rock Hill Police Department, investigating street-level distribution of drugs. On November 7, 1991, an undercover SLED agent fitted with a body transmitter was approached outside a Rock Hill store by a man identifying himself as Mike. The agent told Mike she was looking for a friend to get "something"—meaning drugs, but she discovered her friend was in jail. Mike asked the agent if she wanted "that thing," to which the agent responded that she did. Mike then walked across the street to the side of a house. The agent got in her car and, using her transmitter, relayed a description of Mike to the Rock Hill police officers making up the surveillance team. Mike returned within two to three minutes, and got into the agent's car. He handed the agent a plastic bag containing two off-white, rock-like substances. The agent took the bag and gave Mike a $20 bill. The two continued talking after the sale, and Mike left the vehicle approximately eight to ten minutes from the time he first approached her. Subsequent testing revealed the substance to be crack cocaine.

As the agent drove away she again relayed Mike's description and his probable destination to the surveillance team. Within approximately one minute after the SLED agent drove away, two Rock Hill police cars pulled in front of the house the undercover agent had just described. Two officers approached three black males standing in front of the house. Only one of the men matched the agent's description of Mike. The officers asked each man for identification; the man matching Mike's description produced identification indicating that his name was Michael Gill. Because of the ongoing nature of the investigation, Gill was not arrested until eight months later. At trial, the undercover agent unequivocally identified Gill as the person from whom she bought the drugs. Gill testified at the trial, and presented an alibi defense.

Gill raises two issues on appeal. First, Gill contends the State exercised one of its peremptory strikes in a racially discriminatory manner. Second, Gill contends the trial court erred by failing to require the State to produce a summary report prepared by the police in preparation for trial.

## II.

During jury selection, the State exercised three peremptory challenges, one against a black female and two against white males. Gill objected to the State's strike against the black female juror, and requested a hearing to determine the propriety of the strike under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. (2d) 69 (1986). The assistant solicitor explained the strike:

> She was struck for two reasons, your honor, two and a half actually. The first, she did not want to serve on the jury this time, she asked for a hardship excuse, and I didn't think that would make her a good juror, she would be more reluctant and I wanted jurors who were enthusiastic about service and not someone who was worried about something happening somewhere else. That's the first reason. The second reason—. . . . The other reason is Mr. Brown informed me that that juror lived on the same street as the defendant and it's a possibility that she may have known him. She might not have known him at first, but she might have sat in the jury box through half the

trial and then suddenly realized she knew him and that might have caused problems.[1]

The trial court asked the solicitor whether there were any other people selected for the jury who had asked for a hardship excuse. The solicitor replied, "No sir, your honor. The notes don't reflect it—Mr. Grant's [notes] don't reflect it."[2] As to the State's second reason, Gill's attorney informed the court that Gill at one point had lived on the same street as the juror, but that he had not lived in the area for at least two years. The trial court found the State's two reasons racially neutral, but stated that if any of the sitting jurors had also asked for a hardship, it would look at the matter again.

The trial court denied defense counsel's request to view the solicitor's notes taken during venire to determine whether any other jurors had requested a hardship. However, counsel did review the record with the court reporter and determined that a white female juror had also requested a hardship, but was not excused by the State. The assistant solicitor offered the other solicitor's notes and informed the trial court that he was unaware that the white juror had requested a hardship. While the trial court expressed concern with the State's reliance on incomplete information, he nonetheless denied the *Batson* motion because the State's second reason was racially neutral.

It is well established that *Batson* prohibits the State from exercising its peremptory strikes in a racially discriminatory manner. If a party raises a *Batson* objection, the trial court should hold a hearing to determine whether the peremptory strikes were properly exercised. *State v. Chapman*, 317 S.C. 302, 454 S.E. (2d) 317 (1995). The party exercising the strikes must then provide a racially neutral explanation for the use of the strikes. Unless the discriminatory intent is inherent in the explanation, the reason offered will be deemed race neutral. *State v. Green*, 306 S.C. 94,

---

[1] The State also offered as a "half reason" that the juror was unemployed. As to that reason, the trial court commented, "Well it either is or isn't, so don't—half reasons don't work." The State then dropped its reliance on the proffered "half reason."

[2] The assistant solicitor who tried the case apparently was not present when the jury pool was qualified, and worked from a list prepared by another solicitor when selecting the jury.

409 S.E. (2d) 785 (1991), *cert. denied*, 503 U.S. 962, 112 S.Ct. 1566, 118 L.Ed. (2d) 212 (1992). While the explanation need not rise to the level justifying a challenge for cause, a racially neutral reason cannot be established by merely denying a discriminatory motive. *State v. Tomlin*, 299 S.C. 294, 384 S.E. (2d) 707 (1989). The explanation must be related to the case to be tried, clear, reasonably specific, and legitimate. *State v. Grandy*, 306 S.C. 224, 411 S.E. (2d) 207 (1991).[3] If the proffered reason is facially valid, the challenging party bears the burden of showing that the reason is merely pretext, and that race was the reason for the strike. *See State v. Oglesby*, 298 S.C. 279, 379 S.E. (2d) 891 (1989).

Here, Gill contends that the State's hardship explanation is pretext, because the State did not strike a white juror who also had requested a hardship exemption. According to Gill, this showing of pretext establishes a *Batson* violation without regard to the other reason proffered by the State, or the other circumstances surrounding the strike. We disagree.

Preliminarily, we question whether the State's hardship explanation in fact is pretextual. The burden is on the party challenging the strike to prove that the solicitor's allegedly neutral reason was pretextual because it was not applied in a neutral manner. *Sumpter v. State*, 312 S.C. 221, 439 S.E. (2d) 842 (1994). Here, the white juror apparently requested to be excused from jury duty because her husband was ill. The reason for her requested exemption is compelling, and does not necessarily indicate unwillingness to serve on the jury. However, nothing in the record indicates why the black juror sought an exemption. If her reason was less legitimate or compelling than that of the white juror, it would be more in-

---

[3] We note, however, that the United States Supreme Court recently held, in a *per curiam* opinion, that to rebut a prima facie case of discrimination, the proffered reason must only be facially neutral; the explanation need not be "persuasive, or even plausible." *Purkett v. Elem*, — U.S. —, 115 S.Ct. 1769, 131 L.Ed. (2d) 834 (1995). While the Court did note that implausible or fantastic explanations probably will be found to be pretexts for purposeful discrimination at the third step of the *Batson* procedure, apparently any explanation for a strike that is not inherently racial is sufficient to rebut the prima facie case. It is uncertain whether our Supreme Court will adopt this more lenient standard, or will determine that the stricter standard articulated in *Grandy* is required under the Equal Protection clause of the South Carolina Constitution. S.C. Const. art. I, § 3.

dicative of her disinterestedness and reluctance to serve on the jury. In such a case, striking her but not striking the white juror might not constitute a *Batson* violation. *See State v. Dyar*, 317 S.C. 77, 452 S.E. (2d) 603 (1994), *reh'g granted* (Sept. 8, 1994) (where the State struck a black juror who had criminal charges but did not strike a white juror with criminal charges, no *Batson* violation because the charges against the black juror were handled by the office of the solicitor involved in the case against Dyar, and no evidence was presented showing that the charges against the white juror had been handled by that solicitor); *State v. Wilder*, 306 S.C. 535, 413 S.E. (2d) 323 (1991) (no *Batson* violation where solicitor excused two black jurors because they were late but sat a white juror who was also late, because the white juror expressed a desire to serve on the jury).

Nonetheless, we will assume Gill has adequately established that the hardship excuse was pretextual; however, this assumption does not end our inquiry. In addition to her request for an exemption, the State also struck the black juror because Gill previously lived on the same street as the juror. Striking a juror who lived near the defendant has been held to be a valid use of a peremptory strike. *State v. Johnson*, 302 S.C. 243, 395 S.E. (2d) 167 (1990). Thus, the question before this Court is whether a pretextual explanation for a peremptory strike *necessarily* constitutes a *Batson* violation when a valid, race-neutral explanation for the strike is also offered. We conclude it does not. *See State v. Martinez*, 294 S.C. 72, 362 S.E. (2d) 641 (1987) (no *Batson* violation where one of the State's two reasons proffered for its exercise of peremptory strikes was invalid, but the remaining reason was valid).

The determinative issue in any *Batson* claim is whether, in light of the totality of the circumstances, a party engaged in purposeful, invidious discrimination. In other areas of equal protection jurisprudence it is established that an action motivated in part by an impermissible reason will not necessarily be invalid if the same action would have been taken in the absence of the impermissible motivation. *See Mt. Healthy City Sch. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed. (2d) 471 (1977); *see also United States v. McMillon*, 14 F. (3d) 948, 952, n. 3 (4th Cir. 1994) (a

showing of pretext does not automatically result in a finding of discrimination; the defendant must show, "through all relevant circumstances, that the prosecutor intentionally exercised his strike because of racial concerns.").

Ultimately, it is the trial court which must determine whether a party has engaged in purposeful discrimination through the exercise of peremptory strikes. An invidious discriminatory purpose may be inferred from the totality of the relevant facts; however, the trial court's finding at this stage will largely turn on an evaluation of credibility. *State v. Green*, 306 S.C. 94, 409 S.E. (2d) 785 (1991). As the United States Supreme Court has recognized, the decisive question often will be whether the proffered explanation should be believed:

> There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies "peculiarly within a trial judge's province."

*Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed. (2d) 395 (1991) (citations omitted). Whether a *Batson* violation has occurred must be determined by examining the totality of the facts and circumstances in the record. *Riddle v. State*, — S.C. —, 443 S.E. (2d) 557 (1994), *cert. denied*, — U.S. —, 115 S.Ct. 518, 130 L.Ed. (2d) 424 (1994).

Here, the trial court expressed some concern about the State's reliance on notes prepared by another solicitor, but the court did state that it did not believe the information about the white juror was intentionally omitted.[4] The trial court did not specifically rule on the validity of the hardship explanation, relying instead on the second reason given for the strike. However, the statements of the court make it

---

[4] We share some of the concerns expressed by the trial court. Of course, the State is entitled to consider information gathered through other sources when selecting a jury. However, if the information is gathered or presented in a discriminatory manner (for example, if the person present during the qualification of the venire makes notes only about black jurors), decisions to strike based on that information will not be sustained. Intentional discrimination cannot be protected by laundering the discrimination through an absent party.

clear that the court did not believe the State engaged in purposeful discrimination. This credibility determination by the trial court is entitled to great deference on appeal. *Hernandez; State v. Green*, 306 S.C. at 98, 409 S.E. (2d) at 788.

Moreover, the composition of the jury panel supports the determination that the State did not exercise its peremptory strikes in a discriminatory manner. *See State v. Johnson*, 302 S.C. 243, 395 S.E. (2d) 167 (1990) (composition of the jury panel is a factor that may be considered when determining whether a party engaged in purposeful discrimination). In this case, the jury was composed of eight whites and four blacks. The State used only three of its peremptory strikes, and seated three black jurors before exercising the strike at issue in this case. Therefore, considering all the relevant facts and circumstances, we agree with the trial court's conclusion that the State's exercise of its peremptory strikes did not violate *Batson.*

We are aware that, at first blush, our opinion here seems inconsistent with that of our Supreme Court in *State v. Tomlin*, 299 S.C. 294, 384 S.E. (2d) 707 (1989). In *Tomlin*, the State offered valid reasons for the strike of a black male, but also justified the strike because the juror "shucked and jived" while approaching the microphone. The Supreme Court held the "shucked and jived" statement evidenced the State's "subjective intent to discriminate," and thus constituted a *Batson* violation. *Id.* We do not read *Tomlin* as creating an absolute rule that an invalid explanation for a peremptory strike taints any valid reason offered for the strike, and thus amounts to a per se *Batson* violation. Rather, we understand *Tomlin* as standing for the proposition that, if the invalid reason is so patently racial or derogatory in nature, the court may view the invalid reason as the controlling reason for the strike. Any other reading of *Tomlin* would be inconsistent with established Equal Protection jurisprudence. *See Mt. Healthy City Sch. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed. (2d) 471 (1977); *United States v. McMillon*, 14 F. (3d) 948, 952, n. 3 (4th Cir. 1994).

## III.

Gill also assigns error to the trial court's refusal to require the disclosure of a summary report prepared by the police in

preparation of the State's case. This issue arose during Gill's cross-examination of Detective Barnhill. During he narcotics transaction, Barnhill was in a support vehicle listening (via the body transmitter) to the conversation between the undercover agent and "Mike." He had received Mike's clothing description twice, and after the undercover agent had departed the scene, Detective Barnhill approached Mike and asked for his identification. The pertinent portion of the cross-examination was as follows:

Q: "Did you make any field notes?"
A: "No, ma-am."
Q: "So, you have no notes of what occurred on that night, you're just relying on your memory, aren't you?"
A: "Memory and report, we do have a summary."
Q: "The report being the arrest report, I mean the incident report?"
A: "The summary."
Q: "The summary?"
A: "Uh huh."
Q: "What summary would that be, Officer Barnhill?"
A: "Just a case summary, ma'am."
Q: "Did you turn that over to the solicitor's office?"
A: "Yes, ma'am."

At trial Gill argued that the summary had not been turned over to the defense pursuant to his discovery request. Gill contended the information in the summary was material and that he therefore was entitled to the report. The State contended the report was not subject to disclosure and that "there is absolutely nothing exculpatory" in it. The trial court did not require the disclosure and denied Gill's motion for a mistrial.

On appeal, Gill argues he was entitled to examine the summary report because it was being used by the witness to refresh his present recollection. Gill's argument at trial, however, was apparently based on Rule 5, SCRCrimP and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. (2d) 215 (1963). Because he did not raise the present recollection refreshed argument at trial, we do not address it on appeal. *See State v. White*, 311 S.C. 289, 428 S.E. (2d) 740 (1993); *State v. Meyers*, 262 S.C. 222, 203 S.E. (2d) 678 (1974). To the

extent that Gill's argument on appeal can be viewed as also raising the discovery argument raised at trial, we find no error.

Our rules of criminal procedure require that, upon request by the defendant, the State allow the defendant to inspect and copy any papers or documents in the State's possession or control which are material to the preparation of his defense. Rule 5(a)(1)(C), SCRCrimP. However, Rule 5 specifically excludes from this disclosure requirement "reports, memoranda, or other internal prosecution documents made by . . . prosecution agents in connection with the investigation or prosecution of the case." Rule 5(a)(2), SCRCrimP. The summary report was prepared by the Rock Hill police officers for the solicitor's use in prosecuting the case. Thus, the summary was an internal prosecution document and not subject to discovery.

Likewise, the State had no obligation under *Brady* to turn over the summary report. *Brady* requires that the state disclose evidence in its possession which is favorable to the accused and material either to guilt or punishment, including impeachment evidence. *State v. Bryant*, 307 S.C. 458, 415 S.E. (2d) 806 (1992). Impeachment or exculpatory evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Clark v. State*, — S.C. —, 434 S.E. (2d) 266 (1993). Here, the undercover agent unequivocally identified Gill, and the summary report was consistent with the testimony of all the officers involved. Because the summary report would only have bolstered the testimony of the officers, there is no reasonable probability that the result of the trial would have been different, and there was no obligation to disclose the report. *Id.*

Accordingly, for the foregoing reasons, the decision of the trial court is hereby

Affirmed.

CONNOR, J., concurs.

CURETON, J., concurs in part and dissents in part in a separate opinion.

CURETON, Judge (concurring and dissenting):

Initially, I point out that I agree with the majority's conclusion that the solicitor's explanation for striking the black juror because he thought she and Gill once lived on the same street is racially neutral. I do not agree, however, that this racially neutral reason is sufficient to sustain the strike of the black juror if the solicitor's second reason for the same peremptory strike (the hardship explanation) is found pretextual. As I read the record, the trial judge concluded that inasmuch as the solicitor struck the black juror for a racially neutral reason (lived on the same street as Gill), there was no need to further analyze the hardship explanation.[1] Additionally, the parties do not attempt to examine the validity of the hardship explanation in their briefs, but argue instead whether the solicitor's racially neutral explanation sustains the strike of the black juror regardless of the hardship explanation.[2] Thus, the sole *Batson* issue before us is whether the racially neutral explanation is sufficient to sustain the peremptory strike of the black juror even if the hardship explanation was, in fact, pretextual and constitutionally infirm.

Efforts to eliminate racial discrimination in jury selection are not novel in our judicial system. More than 100 years ago, the United States Supreme Court held that racial discrimination by the State in jury selection offends the Equal Protection Clause of the United States Constitution. *See, e.g., Strauder v. West Virginia*, 100 U.S. 303, 25 L.Ed. 664 (1879).

---

[1]The court stated:

Well, I'm going to allow—we are going to go forward because I did have this second [living on same street] reason but I wanted the State to be aware had that been the only reason, I'm not sure how I would have ruled and I'm not going to make a ruling because I don't need to because it is moot but I do have concern about incomplete—relying on incomplete information and I think that in the future that for the State to make the argument that has been made today, the State is going to have to better reflect that they made a diligent effort to keep appropriate notes or the person who is making the motion should be the one who is saying I'm not relying on somebody's else's notes, I'm relying on my own. I'm not going to go through here to check them all but I would be very concerned if I went through and found that there were no notes made on any white jurors as to being excused but there were on black jurors. I don't think that happened and I'm not saying that it did but those are the kind [sic] of things that the court would have to look into were we to go further on that point. Do you understand?

[2]The State concedes in its brief "that ordinarily these facts (surrounding the hardship explanation) would at least indicate that the State's articulated

Throughout the century following *Strauder*, the Fourteenth Amendment was used to police the jury system, and the United States Supreme Court consistently and repeatedly reaffirmed the basic constitutional principle that the purposeful or deliberate exclusion of African-Americans from jury participation on account of race violates the Equal Protection Clause. *See Neal v. Delaware*, 103 U.S. 370, 26 L.Ed. 567 (1880); *Norris v. Alabama*, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074 (1935); *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed. (2d) 759 (1965); *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed. (2d) 491 (1968); *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed. (2d) 498 (1977).

However, it was not until the 1960's in *Swain v. Alabama* that a criminal defendant invoked this constitutional principle to object to the prosecution's alleged racially discriminatory use of the peremptory challenge. *See generally* Amy E. Haddad, *Constitutional Law—Fourteenth Amendment Right to Equal Protection—Criminal Defendant's Racially Discriminatory Exercise of Peremptory Challenges*, 60 Tenn. L. Rev. 229 (1992). Swain, a black man, challenged his conviction for raping a young white female on the ground that blacks had been unconstitutionally excluded from his jury. *Swain*, 380 U.S. at 203, 85 S.Ct. at 826. Swain first argued that the State's use of peremptory challenges to strike all black people from the jury violated the Equal Protection Clause. *Id.* at 204, 85 S.Ct. at 827. He also argued that the systematic practice of excluding black jurors is "invidious discrimination for which the peremptory system is insufficient justification." *Id.* at 223, 85 S.Ct. at 837. The Court rejected Swain's attempt to establish an equal protection claim premised solely on the pattern of jury strikes in his own case, and held instead that proof of systematic exclusion of African-Americans through the use of peremptories over a period of time might establish such a vio-

reason may be pretextual." It argues, however, the court should consider surrounding circumstances in determining whether an articulated reason is truly pretextual. The State continues:

In Appellant's case, there was *more than one* reason why the assistant solicitor felt that [the black juror] would not make a good juror for Appellant's trial. It appears that even if [the black juror] had not made the hardship request, the State would still have exercised a strike against her because of their apprehension that she may have known Appellant when he lived on her street.

lation. *Id.* at 224-226, 85 S.Ct. at 838-839. The *Swain* standard for proving a Fourteenth Amendment violation, requiring systematic discrimination by the prosecutor over many cases, soon proved impossible for defendants to satisfy.[3] Thus, the continuing practice of prosecutors using peremptory challenges to strike all or most blacks from juries caused the United States Supreme Court in 1986 to re-examine the *Swain* standard of proof in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. (2d) 69 (1986).

The Supreme Court in *Batson* rejected *Swain's* evidentiary formulation because it placed on defendants "a crippling burden of proof." *Id.* at 92, 106 S.Ct. at 1721. The Court reasoned that racial discrimination in jury selection not only harms the defendant on trial, but also the entire community by undermining public confidence in the fairness of our system of justice. *Id.* at 87, 106 S.Ct. at 1718. It held that the Equal Protection Clause of the Fourteenth Amendment prohibits a state prosecutor in a criminal case from using peremptory challenges to strike potential jurors based solely on their race on the assumption that African-American jurors as a group would not impartially consider the state's case against an African-American defendant. *Id.* at 89, 106 S.Ct. at 1719.

The policies underlying *Batson* illustrate that the ultimate goal is to eliminate discriminatory jury selection practices. Writing for the majority, Justice Powell announced the particular manner in which discrimination may be proven. A prima facie case of purposeful discrimination is made out "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose."[4] *Id.* at 94, 106 S.Ct. at 1721 (citing *Washington v. Davis*, 426 U.S. 229, 239-242, 96 S.Ct. 2040, 2047-2049, 48 L.Ed. (2d) 597 (1976)). In making out the prima facie case, the Court also noted that the defendant is

---

[3] The stringent burden of proof adopted in *Swain* required the defendant to show "when, why, and under what circumstances in cases previous to this one the prosecutor used his strikes to remove Negroes." *Swain*, 380 U.S. at 226, 85 S.Ct. at 839.

[4] In the most recent South Carolina decision concerning the establishment of a prima facie case, the Court noted, "[i]n our opinion, requesting a *Batson* hearing in effect sets out a prima facie case of discrimination . . . the striking of any juror can raise the inference of race and/or gender based discrimination." *State v. Chapman*, — S.C. —, —, 454 S.E. (2d) 317, 320 (1995).

entitled to rely on the fact that peremptory challenges "permit those to discriminate who are of a mind to discriminate." *Id.* at 96, 106 S.Ct. at 1723 (quoting *Avery v. Georgia*, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244 (1953)); *see also State v. Jones*, 293 S.C. 54, 358 S.E. (2d) 701 (1987).

After the defendant demonstrates a prima facie case, the burden shifts to the prosecutor to show racially neutral reasons for the exercise of his strikes. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723; *see also State v. Green*, 306 S.C. 94, 409 S.E. (2d) 785 (1991). Although the explanation need not rise to the level justifying a challenge for cause, a party may not rebut a prima facie case by merely denying a discriminatory motive. *Id.; see also State v. Tomlin*, 299 S.C. 294, 384 S.E. (2d) 707 (1989).

In determining whether the explanation is adequate, the trial judge should consider whether the reasons are: (1) neutral, (2) related to the case to be tried, (3) clear and reasonably specific, and (4) legitimate. *Id.* 384 S.E. (2d) at 709. Because the trial judge's findings regarding purposeful discrimination rest largely upon an evaluation of the credibility of the attorney making the strikes, we give those findings great deference. However, where the record does not support the attorney's stated reason for making the strike, the trial court's findings must be overturned. *State v. Patterson*, 307 S.C. 180, 414 S.E. (2d) 155, 157 (1992).

Even if the party whose strikes are challenged articulates legitimate reasons for the strikes, the party challenging the strikes may establish that the explanations are a mere pretext. A facially neutral reason will be rejected as a sham or pretext where the reason is not applied in a neutral manner. This may be accomplished by showing an inconsistent application of the purported reason as relates to similarly situated jurors. *See State v. Grate*, 310 S.C. 240, 423 S.E. (2d) 119 (1992) (solicitor struck two black males, ages 22 and 28, because they were young and he desired an older jury; however, a 21-year-old white female was seated, demonstrating the purported reason was a pretext); *see also State v. Adams*, 307 S.C. 368, 415 S.E. (2d) 402 (1992) (black male struck because docket clerk placed question marks beside his name, yet white male with question marks beside his name was empaneled); *State v. Oglesby*, 298 S.C. 279, 379 S.E. (2d) 891 (1989) (three black females stricken because they were patients of the defense wit-

ness doctor; however, solicitor allowed a white female who was also a patient of the same doctor to be seated). Thus, the explanation given for a strike must be applied equally across the board.

Even where the party challenging peremptory strikes can show that white venirepersons having certain characteristics were seated and African-American venireperson with those same characteristics excluded, there is no per se *Batson* violation and the solicitor may nevertheless avoid a finding of pretext if he can provide an additional nondiscriminatory reason for treating the white and African-American venireperson differently. *See Sumpter v. State*, 312 S.C. 221, 439 S.E. (2d) 842 (1994). While I agree with the majority that the burden is on the defense to prove the solicitor's allegedly neutral reason was a pretext because it was not applied in a neutral manner, I think this burden is met once it is demonstrated that the white juror who was seated had the same disqualification as the unseated black juror. *Id.* 439 S.E. (2d) at 844 (defendant did not satisfy burden of proving that solicitor's reasons were pretextual because no evidence was presented that white juror who was seated had the same disqualification as excluded black juror). For instance, in *State v. Geddis*, 313 S.C. 37, 437 S.E. (2d) 31 (1993), the solicitor struck a black 23-year-old female because of her young age, but allowed two white women, both twenty years of age, on the jury. The solicitor offered an additional and distinguishing nondiscriminatory reason for his seemingly inconsistent action. He explained that the two white jurors had shown great interest in watching another trial on the day prior to their selection in the instant case, thereby overcoming his normal practice of striking young females, and that the black juror had not displayed a similar interest. This, according to the court, demonstrated that the black and white jurors were not similarly situated and therefore the facially valid reason was not pretextual. *Id.* 437 S.E. (2d) at 33.

In the case before us, the court failed to examine the legitimacy of the two hardship explanations although Gill demonstrated they were similarly situated and the solicitor offered no further explanation which would create a distinction between them. Despite the speculation engaged in by the majority whereby it declares the white woman's hardship explana-

tion might have been more legitimate and compelling than the black juror's, thus justifying their disparate treatment, nothing in the record indicates either hardship explanation was more compelling or legitimate than the other, and the trial judge did not find any distinction between the two nor did he even attempt to evaluate any possible distinctions.[5] Since the State did not provide a distinguishing explanation of why it did not exercise a peremptory challenge against the white venireperson who requested a hardship excuse while exercising one against the black venireperson who made an identical request, the hardship explanation for the strike against the black venireperson was a mere pretext. *See Oglesby*, 379 S.E. (2d) at 892 (originally neutral reason may be proven to be pretextual because not applied in a neutral manner); *see also Foster v. Spartanburg Hosp. System*, 314 S.C. 282, 442 S.E. (2d) 624 (Ct. App. 1994) (regardless of the reasonableness of the explanation provided by the striking party, it is clear the reason was not applied in a neutral manner and therefore the explanation forms no reasonable basis for the exclusion and was merely a pretext for excluding the juror based on race). This case can be distinguished from *Sumpter* and *Geddis* where the evidence showed that the black and white jurors were not similarly situated since their disqualifications were not the same.

Thus, concluding for the purposes of this appeal that Gill established the hardship explanation was a pretext, the ultimate question before this court, as pointed out by the majority, is whether a pretextual explanation for a peremptory strike necessarily constitutes a *Batson* violation when a valid, race-neutral explanation for striking the juror in question is also offered. Based on the above-discussed precedential underpinnings of the *Batson* decision and its underlying rationale, I am of the opinion that even though the prosecutor may have given one racially neutral explanation, the racially motivated explanation, as evidenced by the finding of pretext, vitiates the legitimacy of the entire jury selection procedure. Once it is found that the exercise of even one peremptory challenge is racially motivated, this in and of itself gives rise to an infer-

---

[5] Instead the trial judge accepted the State's assertion that this issue was moot due to the State's second independent reason for the strike and denied the *Batson* motion.

ence of discriminatory purpose and violates the mandates of *Batson,* which explicitly prohibits the State from exercising strikes in a racially discriminatory manner. To hold otherwise, I believe, completely guts the whole notion of pretext, and offends the policies underlying *Batson.*

Although the specific question of whether a showing of pretext establishes a *Batson* violation when another racially neutral and valid explanation has been provided has not been resolved by the appellate courts of this State, there is a paucity of federal and foreign state case law on this issue. My research reveals courts have taken two well-defined approaches to ruling on these challenges. Texas, Georgia, and the Military Courts have adopted the "tainted" approach, where a racially motivated explanation will vitiate the entire selection process regardless of the genuinness of other explanations for the strike. *See, e.g. Moore v. State,* 811 S.W. (2d) 197 (Tex. App. 1991) (venireperson would have problem assessing punishment (valid) and was member of minority club (invalid)); *United States v. Greene,* 36 M.J. 274 (C.M.A. 1993) (possible antagonism against government (valid) and Latino "macho" type attitude (invalid)); *Rector v. State,* 213 Ga. App. 450, 444 S.E. (2d) 862 (1994) (venireperson's low education and occupation (valid) and gold tooth (invalid)); *Strozier v. Clark,* 206 Ga. App. 85, 424 S.E. (2d) 368 (1992) (age (valid) and assumption that venireperson would act along racial lines (invalid)); *see also McKinney v. State,* 761 S.W. (2d) 549 (Tex. App. 1988); *Speaker v. State,* 740 S.W. (2d) 486 (Tex. App. 1987).

A second approach is that a racially neutral explanation will sustain the peremptory strike, even if an additional racially based reason is present. The Second Circuit has adopted this approach in applying the "dual motivation" analysis to *Batson* that is applied in other areas of Equal Protection jurisprudence. In *Howard v. Senkowski,* 986 F. (2d) 24 (2nd Cir. 1993), in referring to other spheres of constitutional law, the court stated that "the Supreme Court has made it clear that the challenged action is invalid if motivated in part by an impermissible reason but that the alleged offender is entitled to the defense that it would have taken the same action in the absence of the improper motive." *Id.* at 26; *see also, United States v. Iron Moccasin,* 878 F. (2d) 226 (8th Cir. 1989) (although not formally holding that one valid reason will suffice,

where prosecution offered three reasons for the strike, acceptance of the first removes necessity to look at other two). Under this approach, if the party alleging a *Batson* violation is able to show an improper motivation, then the party exercising the peremptory challenge has an affirmative duty to then demonstrate that the same challenge to the juror would have been made in the absence of the improper motivation.

Finally, in *United States v. Alcantar*, 897 F. (2d) 436, 440 (9th Cir. 1990), the Ninth Circuit stated that "where both legitimate and illegitimate reasons are offered by the prosecution [for exercising a peremptory strike], the need for a meaningful adversarial hearing to discover the true motivation behind the challenges is especially strong." This approach suggests a middle ground between the approaches discussed above and requires the trial judge to determine the dominant reason behind the strike.

My review of South Carolina cases has uncovered only two cases that directly reflect on this issue. In *State v. Martinez*, 294 S.C. 72, 362 S.E. (2d) 641 (1987), the solicitor struck two black jurors because they "were of the same sex and age as appellant and also had 'possible' criminal records." The court implicitly conceded the solicitor's use of age as an explanation was "insufficient" because the State had seated a white juror of the same approximate age. Our Supreme Court, nevertheless, sustained the strikes because the black jurors "were noted as having possible criminal records." In *State v. Tomlin*, 299 S.C. 294, 384 S.E. (2d) 707 (1989), however, the court found a *Batson* violation where a juror was stricken for three reasons, two of which were found to be racially neutral. The court ruled that the third explanation that the juror "shucked and jived" was a racial stereotype and "evidence of the prosecutor's subjective intent to discriminate and clearly violates the mandates of *Batson*." *Id.* 384 S.E. (2d) at 710.

In basically adopting the second approach, the majority cites *Martinez* as support for the adoption. Because I cannot square *Tomlin* with *Martinez*, I believe we should follow *Tomlin* which implicitly takes the "tainted" approach. As stated in *Rector v. State*, "[w]hile we realize that it is unrealistic to expect trial counsel to put aside every improper influence when selecting a juror, we conclude that is exactly what the law requires" *Id.* 444 S.E. (2d) at 865 (citing *State v. Tomlin*, 299

S.C. 294, 384 S.E. (2d) 707 (1989)). The courts that have used the "tainted" approach reason that if race or gender becomes a factor in the exclusion of a juror, the jury selection process has become contaminated and "no neutral explanation can serve to rebut the presumption that the condemned practice of exclusion based on race occurred. . . ."

A review of the many cases decided by our Supreme Court addressing the *Batson* issue makes it clear that the court will give great deference to a trial judge's ruling regarding his assessment of whether a party exercising a peremptory strike did so with a racial or gender motivation. *See State v. Patterson,* 307 S.C. 180, 414 S.E. (2d) 155 (1992). Additionally, it appears that only the more apparent pretextual explanations will be condemned by the court. *See, e.g., State v. Dyar,* — S.C. —, 452 S.E. (2d) 603 (1994) (because the solicitor had no actual knowledge of the criminal records of white jurors, he manifested no subjective racial motivation for striking a black juror with a similar criminal record even though his office had furnished defendant's counsel the white jurors' names as veniremen with criminal records). So in fairness to the majority, the Supreme Court may at this juncture in the development of the parameters of *Batson* approve the approach adopted by the majority. However, I think to do so would effectively and practically destroy an appellate court's ability to judge the pretextual character of *Batson* challenges and will hasten Justice Clarence Thomas' prophecy that "defendants will rue the day that this court ventured down this road that inexorably will lead to the elimination of peremptory strikes." *Georgia v. McCollum,* 505 U.S. 42, —, 112 S.Ct. 2348, 2360, 120 L.Ed. (2d) 33 (1992). I would reverse on the *Batson* issue.