481 S.E.2d 169

**The STATE, Respondent,**

v.

**Howard Nelson CASEY, Appellant.**

**No. 2612.**

Court of Appeals of South Carolina.

Heard Nov. 7, 1996.

Decided Jan. 13, 1997.

Rehearing Denied Feb. 21, 1997.

448

L. Scott Harvin, Charleston, for appellant.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General G. Robert Deloach, III, Columbia; and Solicitor David P. Schwacke, N. Charleston, for respondent.

HOWELL, Chief Judge:

Howard Casey was convicted of driving under the influence (DUI). He appeals the trial court's denial of his *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), motion challenging five of the State's peremptory strikes. We affirm.

## I.

At the close of jury selection, Casey moved under *Batson* to challenge the State's exercise of all of its peremptory strikes against male venirepersons. At the hearing on Casey's motion, the court asked the solicitor to provide a "sex neutral reason" for the challenges. The solicitor stated that three of the males (Nos. 7, 215, and 78) were stricken because of prior DUI convictions, and none of the females who were empaneled had DUI convictions. Casey moved to have the State produce the criminal records of the female jurors, but the court denied the motion, accepting the solicitor's representations as an officer of the court. The solicitor then explained that he struck another male (No. 9) because he had served on a case earlier in the week. The court asked, "didn't you also leave some jurors" who recently served? The solicitor responded, "Only one to my knowledge ... There was one I missed and that is because by the time I checked my list I was being asked the question, and I just answered." The court reminded the solicitor that, "Well, you missed Ms. Heyward too." The solicitor replied, "I may have, Your Honor, that was the intent.... There is no intrigue here. It was just a missing number." The court responded, "I understand. You are advising the Court it is inadvertence." The solicitor's stated reason for the fifth strike was that because the juror "showed up every day here in court in a white t-shirt," the solicitor felt the juror was inappropriately dressed "for the court." Casey's counsel responded that, if his memory served him, "at least one other member in the panel ... may have had a blue t-shirt on," and there was no reason to draw a distinction between a white and a blue t-shirt. The court concluded the hearing by finding no violation: "I believe [the solicitor] did not exercise his strikes purely on a sexually discriminatory matter."

Casey raises three issues on appeal: (1) the court erred in finding no discrimination where the State's proffered reason for one of the strikes was mere inadvertence; (2) under the circumstances of the case, the court's reliance on the solicitor's credibility was insufficient; and (3) the State should have been required to disclose the jurors' criminal records where one of the solicitor's proffered explanations was based on criminal records.[1]

## II.

■ The rule concerning the use of peremptory challenges announced in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), has evolved considerably in both federal and state courts over the past ten years. However, the current standard still retains the familiar three part framework: (1) the trial judge must hold a *Batson* hearing when members of a cognizable racial group or gender are struck and the opposing party requests a hearing; (2) the proponent of the strike must proffer a race or gender neutral explanation; and (3) the opponent of the strike must show that the facially neutral explanation given was mere pretext. *State v. Adams,* 322 S.C. 114, 470 S.E.2d 366 (1996). This analysis enables the trial court to determine whether *Batson*'s central purpose of prohibiting purposeful, invidious discrimination has been violated. *State v. Gill,* 319 S.C. 283, 460 S.E.2d 412 (Ct.App.1995), *cert. granted,* (Feb. 9, 1996).

■ Recent federal and state precedents have further clarified *Batson*'s second and third steps. Under step two, the proponent of the challenge does "not have any burden of presenting reasonably specific, legitimate explanations for the strikes." *State v. Easler,* 322 S.C. 333, 350, 471 S.E.2d 745, 755 (Ct.App.1996) (citations omitted). While "[m]erely denying a discriminatory motive" is insufficient, *State v. Watts,* 320 S.C. 377, 380, 465 S.E.2d 359, 362 (Ct.App.1995), the proponent of the strike need only present race or gender neutral

---

1. Even if Casey had properly raised below his argument that these issues be considered under the state Constitution, our analysis would still be the same. *See generally State v. Adams,* 322 S.C. 114, 124, 470 S.E.2d 366, 372 (1996) (adopting "new" standard articulated in *Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995)).

reasons. *Easler*, 322 S.C. 333, 471 S.E.2d 745. Nor does the second step demand "an explanation that is persuasive, or even plausible," and the trial court need not terminate "the inquiry at step 2 when the race [or gender] neutral reason is silly or superstitious." *Purkett*, 514 U.S. at 786, 115 S.Ct. at 1771. Once the race or gender neutral reason is given, the opponent of the strike, as movant, still carries "the ultimate burden of showing purposeful discrimination," and must convince the trial court of pretext. *Adams*, 322 S.C. at 124, 470 S.E.2d at 372. The determination of whether the minimum quantum of evidence has been produced under the third prong is flexible, for the trial court's ruling turns on an examination of "the totality of the facts and circumstances in the record," *Easler*, 322 S.C. at 347, 471 S.E.2d at 753 (citations omitted), including the "credibility and demeanor" of the strike's proponent, *State v. Kelley*, 319 S.C. 173, 176–78, 460 S.E.2d 368, 370 (1995), and the plausibility of a neutral, but otherwise unpersuasive, reason. *Adams*, 322 S.C. 114, 470 S.E.2d 366.

Before turning to the issues on appeal, we note that the State does not dispute that Casey set forth a *prima facie* showing entitling him to a *Batson* hearing as to all five strikes. *See State v. Chapman*, 317 S.C. 302, 306, 454 S.E.2d 317, 320 (1995) (Any "person regardless of race or gender may set forth a *Batson* claim."). We point this out, however, for though this appears to be the first instance in which a South Carolina appellate court has squarely faced *Batson* in the context of alleged gender discrimination, there is ample support in the case law for such a claim. *See generally J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (*Batson* rule extended to prohibit gender based discriminatory strikes); *Adams*, 322 S.C. at 124, 470 S.E.2d at 372 (*Batson* hearing required when "members of a cognizable racial group or gender are struck."); *Chapman*, 317 S.C. at 306, 454 S.E.2d at 320 (The "striking of any juror can raise the inference of race and/or gender based discrimination.").

### A.

Casey first contends that the State's explanation of mere inadvertence was not a gender neutral reason for one of its strikes. We disagree and find that this argument is unsup-

ported by the record and fails to address the distinction between *Batson*'s second and third steps.

The State's explanation for striking juror No. 9 satisfied *Batson*'s second step: recent prior jury service is a facially neutral reason for exercising a peremptory strike. *See generally Sumpter v. State*, 312 S.C. 221, 439 S.E.2d 842 (1994) (explanation that solicitor had stricken juror in another case earlier in the week was a racially neutral reason); *cf. State v. Grandy*, 306 S.C. 224, 411 S.E.2d 207 (1991) (state's reason for striking a black male because solicitor desired to seat other venirepersons who had not yet been presented was not racially neutral). Thus, the State successfully rebutted Casey's *prima facie* case, and Casey's mere inadvertence argument is not applicable. *Cf. State v. Tomlin*, 299 S.C. 294, 384 S.E.2d 707 (1989) (a party may not rebut a *prima facie* case by merely denying a discriminatory motive). Moreover, the record supports the court's findings that the State's reasons for its other four strikes were racially neutral.[2]

Casey's reliance on the solicitor's mere inadvertence explanation is also misplaced because this reason relates to why a female juror, *was not* struck, rather than why a male juror, No. 9, *was* struck. In other words, the solicitor's proffered explanation for applying a neutral reason (prior jury service) in an inconsistent manner (allowing a female to be seated while later challenging a male), was relevant under *Batson*'s third step, not the second step.

"Generally, one shows pretext by demonstrating that similarly situated jurors of other races [or genders] were seated." *State v. Adams*, 322 S.C. 114, 123, 470 S.E.2d 366, 371 (1996); *see, e.g., State v. Grate*, 310 S.C. 240, 423 S.E.2d

---

**2.** The explanation given for three of the strikes (Nos. 7, 215, and 78) was neutral because our supreme court has held that a prior criminal conviction is a neutral reason to strike. *Sumpter*, 312 S.C. 221, 439 S.E.2d 842 (solicitor's explanation for striking a black venireperson was racially neutral where prospective juror had a prior DUI involvement). The State's rationale in striking No. 59 because he was wearing a white t-shirt is also gender neutral. *See generally State v. Guess*, 318 S.C. 269, 457 S.E.2d 6 (Ct.App.1995) (solicitor could strike venireperson because of demeanor observed during qualification); *State v. Wilder*, 306 S.C. 535, 413 S.E.2d 323 (1991) (two black males struck because they were late); *State v. Wright*, 304 S.C. 529, 405 S.E.2d 825 (1991) (stricken juror had disinterested attitude and demeanor).

119 (1992); *State v. Adams,* 307 S.C. 368, 415 S.E.2d 402 (1992); *State v. Oglesby,* 298 S.C. 279, 379 S.E.2d 891 (1989); *Foster v. Spartanburg Hosp. System,* 314 S.C. 282, 442 S.E.2d 624 (Ct.App.1994). However, the uneven application of a neutral reason does not automatically result in a finding of invidious discrimination if the strike's proponent provides a race or gender neutral explanation for the inconsistency. *State v. Kelley,* 319 S.C. 173, 460 S.E.2d 368 (1995) (state provided a racially neutral explanation for why the solicitor did not strike a juror with similar characteristics to one previously stricken); *see Purkett,* 514 U.S. at 768, 115 S.Ct. at 1771 (At step 3, "persuasiveness of the justification becomes relevant.") *see also State v. Geddis,* 313 S.C. 37, 437 S.E.2d 31 (1993); *Wilder,* 306 S.C. 535, 413 S.E.2d 323. The ultimate question which the trial court resolves under the third step is whether the movant has met his burden in demonstrating purposeful discrimination. *Adams,* 322 S.C. 114, 470 S.E.2d 366. The trial court must often base its decision on credibility determinations, and its rulings on discrimination are accorded great deference on appeal. *See generally State v. Green,* 306 S.C. 94, 409 S.E.2d 785 (1991) (absent showing that solicitor intentionally exercised strike because of discriminatory reasons, trial judge's findings that strike was not racially motivated should be given great deference on appeal), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1566, 118 L.Ed.2d 212 (1992); *Gill,* 319 S.C. 283, 290, 460 S.E.2d 412, 416 ("There will seldom be much evidence bearing on [the issue of invidious discrimination], and the best evidence often will be the demeanor of the attorney who exercises the challenge. . . . evaluation of the prosecutor's state of mind lies peculiarly within a trial judge's province.") (citing *Hernandez v. New York,* 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). However, where the trial court's findings are not supported by evidence in the record, such findings will be overturned. *Grate,* 310 S.C. 240, 423 S.E.2d 119.

■ Because the State applied its facially valid reasons inconsistently in permitting a female juror (indeed, the first juror qualified) to be seated, Casey's *Batson* motion could have gone either way. However, the State's explanation for this omission, mistake, was gender neutral. The trial judge, who saw and heard the solicitor himself, found the solicitor to

be credible, and therefore concluded that no purposeful discrimination was intended. *See Kelley,* 319 S.C. 173, 460 S.E.2d 368; *Purkett,* 514 U.S. 765, 115 S.Ct. 1769. In view of the deference we give to the trial court, particularly concerning credibility determinations, we find no error.

### B.

■ Casey contends that the solicitor's statements alone do not suffice to overcome the substantial record evidence which all points to discrimination: (1) all five of the State's peremptory challenges were against males, and a party's pattern of strikes is evidence which can bear out a finding of discrimination; (2) the State failed to enter into evidence the criminal records of the female jurors; (3) the State's white t-shirt reason, although gender neutral, was specious; and, (4) the State applied one of its facially valid reasons in an inconsistent manner. Again, we disagree.

In support of the State's position, the record demonstrates that: (1) the solicitor had neutral reasons for all five strikes; (2) the solicitor represented that none of the female jurors had criminal records; and (3) the solicitor gave reasons for applying the neutral reasons inconsistently. As previously noted, this evidence could go either way, and because we cannot say that the "court's findings are not supported by evidence in the record," *Grate,* 310 S.C. at 242, 423 S.E.2d at 120, we find no error.

### C.

■ Casey's final assignment of error is the trial court's refusal to order the State to disclose and put into the record the information upon which the solicitor made his strikes, in particular, the criminal records. We find no error.

■ The general rule is that absent statute or court rule, there is no right to discovery in a criminal case. *State v. Childs,* 299 S.C. 471, 473–74, 385 S.E.2d 839, 841 (1989) ("Because there is no statute or rule requiring a disclosure of ... [juror arrest, conviction, and prior jury service records], the trial judge did not abuse his discretion in denying" a request for such information.). Casey seeks to hold this rule

inapplicable by interpreting *Batson* and its progeny to require that the proponent of a strike cannot rely on naked assertions to support a particular strike, but must affirmatively come forward with record evidence to support his explanations. We disagree.

Neither *Batson* nor its progeny requires that the proponent of a strike present evidentiary support for the strike. *See State v. Kandies*, 342 N.C. 419, 467 S.E.2d 67, 77 (1996) ("[T]he district attorney is an officer of the court, and, as such, is sworn to represent the State honestly and to the best of his ability. Absent evidence to the contrary, it is not unreasonable for the trial court to assume that the prosecutor is telling the truth with regard to the criminal records of prospective jurors."). Accordingly, we conclude that the trial court did not err in refusing Casey's motion to have the State produce the jurors' criminal records.

For the foregoing reasons, the judgment below is

**AFFIRMED.**

HUFF and HOWARD, JJ. concur.