23246

The STATE of South Carolina, Respondent v.
Willie Lee JOHNSON, Appellant.

(395 S.E. (2d) 167)

Supreme Court

*Jack W. Lawson, Jr.,* of Florence, and *Kenneth R. Young, Jr.,* Sumter, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Atty. Gen. Harold M. Coombs, Jr.,* and *Staff Atty. Miller W. Shealy, Jr.,* Columbia, and *Sol. J. Dupre Miller,* Bennettsville, *for respondent.*

Heard Feb. 5, 1990.

Decided July 23, 1990.

TOAL, Justice:

Willie Lee Johnson was convicted of trafficking cocaine. On appeal, Johnson challenges the State's use of its peremptory challenges, the validity of the search warrants and the refusal of the trial judge to declare a mistrial because of a juror's communication with a third party. We affirm in part and remand in part.

## FACTS

On Thursday, May 12, 1988, an informant went to Johnson's home between 11:00 p.m. and midnight. Shortly thereafter, the informant told South Carolina Law Enforcement agents that he had seen a large quantity of cocaine, cash and a gun in Johnson's home. This information was then given to the county sheriff and a search warrant was issued by a county magistrate at approximately 1:30 a.m. The affidavit underlying the warrant stated that a confidential informant had seen a quantity of cocaine in Johnson's home within the past seventy-two (72) hours.

After the officers obtained the search warrant they set up a stakeout surveillance on Johnson's apartment. After approximately 30 minutes, Johnson left his apartment, got into a car and drove to a convenience store. The officers followed him and then stopped Johnson after he left the store. The officers told Johnson they had a search warrant and he accompanied them to his apartment. The following items were found pursuant to the search: a small quantity of cocaine, a .22 caliber Derringer pistol, a set of digital scales, a set of triple-beam balance scales and a glass pipe. Johnson was placed under arrest and searched. Cash in the amount of $742.48 was found on Johnson at the time of his arrest.

Because Johnson refused to consent to a search of his car, a second search warrant was procured for the automobile. A Crown Royal bag was found in the glove compartment which contained a large quantity of cocaine and approximately $8,000 in cash. The total amount of cocaine found in the apartment and automobile was 32.39 grams, more than 3 times the amount necessary for trafficking.

## LAW/ANALYSIS

1. *Batson Issue*

Johnson contends that the Solicitor's explanations for striking six black jurors were not racially neutral in contravention of *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. (2d) 69 (1986).

The State exercised all of its peremptory challenges to strike six black jurors, five from the main panel and one alternate. In response to defense counsel's objections, the trial

judge conducted a *Batson* hearing. When the Solicitor gave his explanations, he indicated that law enforcement officers had given him information about many of the jurors to aid him in exercising his strikes. At the conclusion of the hearing, the trial judge ruled that the Solicitor's explanations for striking the jurors were sufficiently neutral.

The Solicitor indicated that the jurors were struck for the following reasons: (1) juror knew and associated with Johnson; (2) juror's neighbor had been arrested by one of the officers involved in this case; (3) juror lived near and frequented an establishment which has had great conflict with the law enforcement of the county; (4) juror's brother or man who shared juror's last name had an indictment against him; (5) juror lived in close proximity to Johnson; and (6) juror lived next door to and had a close relationship with a man who had recently been convicted of a drug offense. The Solicitor stated that he was afraid that these jurors could not be impartial to the State because of these reasons.

The final jury was composed of eight whites, four blacks and one black alternate.

Johnson argues that the explanations were not sufficient because they were not related to this case and because the Solicitor failed to indicate whether these standards were applied to white jurors who were seated.

We find that the explanations set forth by the Solicitor were racially neutral and were "related to [the Solicitor's] view concerning the outcome of the case to be tried." *Batson*, 106 S. Ct. at 1718-1719. Therefore, we find that these reasons were sufficient to withstand the *Batson* inquiry.

In addition, it is noteworthy that three black jurors were seated before the State exercised any strikes. *U.S. v. Lane*, 866 F. (2d) 103 (4th Cir. 1989).

Finally, in regard to the second part of Johnson's argument, the Solicitor does not have a duty to indicate whether these standards were applied to white jurors who were seated. The burden is on the defense counsel to prove that the Solicitor's allegedly neutral reasons were pretextual because they were not applied in a neutral manner. No evidence was presented that a white juror was seated who had the same disqualification as the black jurors who were struck. Therefore, this case may be distinguished from

*State v. Oglesby,* 298 S.C. 279, 379 S.E. (2d) 891 (1989), on the facts. In *Oglesby,* three black jurors were struck because they were patients of a doctor who was a defense witness. This reason was found to be a pretext when a white juror who was also a patient of this doctor was seated on the jury.

## 2. *Search Warrants*

Johnson contends that the evidence obtained pursuant to the search warrants should have been suppressed. He claims that the first warrant was invalid because the underlying affidavit lacked probable cause. Because the second warrant was obtained on the basis of evidence found pursuant to the first warrant, he claims that evidence seized from the car was "fruit of the poisonous tree." *Wong Son v. United States,* 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. (2d) 441 (1963).

### A. *Search Warrant for Home*

Specifically, Johnson contends that the affidavit underlying the search warrant lacked probable cause because the informant's allegations were not corroborated and the reliability of the informant was not set forth.

The United States Supreme Court adopted a "totality of the circumstances" test to assess informant information as the basis for a probable cause affidavit in *Illinois v. Gates,* 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. (2d) 527 (1983). Under this test,

> [t]he task of the issuing magistrate is simply to make a practical, common sense decision whether, the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing] that probable cause existed.'

*Illinois v. Gates,* 462 U.S. at 238-39, 103 S. Ct. at 2332.

Although the affidavit states that the informant saw the evidence in Johnson's home within 72 hours of the issuance of the warrant, it does not set forth any information as to the reliability of the informant nor was the information corroborated. The officer who had obtained the warrant testified dur-

ing the suppression hearing that he had worked with the informant on several other cases. It is not clear from the record, however, whether this information was given to the magistrate.

Without any information concerning the reliability of the informant, " 'the inferences from the facts which lead to the complaint' will be drawn not 'by a neutral and detached magistrate,' as the Constitution requires, but instead, by a police officer 'engaged in the often competitive enterprise of ferreting out crime,' or, as in this case, by an unidentified informant." (Citations omitted.) *Aguilar v. Texas*, 378 U.S. 108, 115, 84 S. Ct. 1509, 1514, 12 L. Ed. (2d) 723 (1964). Applying the totality of the circumstances test, it is the opinion of this Court that the affidavit by itself did not provide the magistrate with sufficient information concerning the informant's reliability upon which he could base a probable cause determination.

The State argues that the search may be validated by the good faith exception adopted in *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. (2d) 677 (1984). We disagree.

In *Leon*, the Supreme Court held that "the Fourth Amendment exclusionary rule does not bar the admission of evidence obtained by officers acting in reasonable reliance on a search warrant which was issued by a detached and neutral magistrate but ultimately found to be invalid." The dispositive issue here is whether sufficient information was given to the magistrate to perform his "neutral and detached" function rather than serve as a "rubber stamp for the police."

*Leon* specifically precludes the application of the good faith exception in this situation.

> [R]eviewing courts will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.' 'Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.'

(Citations omitted). *Leon*, 468 U.S. at 915, 104 S. Ct. at 3416, 82 L. Ed. (2d) at 693. We have already found that the affidavit

alone does not include sufficient information to allow a magistrate to determine probable cause. Therefore, the good faith exception may not be employed to validate this warrant.

This Court, however, has recognized that a warrant affidavit which is insufficient in itself to establish probable cause may be supplemented by sworn oral testimony. *State v. Crane*, 296 S.C. 336, 372 S.E. (2d) 587 (1988); *State v. Mc-Knight*, 291 S.C. 110, 352 S.E. (2d) 471 (1987). As noted above, it is not clear from this record whether oral testimony concerning the reliability of the informant was given to the magistrate. Therefore, we remand this issue to the trial court so that it may be determined exactly what information was supplied to the magistrate. *State v. Smith*, 392 S.E. (2d) 182 (S.C. 1990).

If it is determined that the affidavit was in fact supplemented by sworn oral testimony before the magistrate regarding the informant's reliability thereby establishing probable cause, the validity of the warrant may be upheld. The admission of the evidence would therefore have been proper and the conviction would be affirmed.

In contrast, if it is determined that the affidavit was not supplemented with testimony containing sufficient information to establish probable cause, Johnson will be entitled to a new trial and the evidence seized pursuant to the warrant must be suppressed.

### B. *Search Warrant for Automobile*

As noted above, Johnson claims that the evidence seized from his car should be suppressed as "fruit of the poisonous tree." The resolution of this issue will be dependent upon the outcome of the hearing on remand. If the first warrant is determined to be valid, then the second warrant would also be valid. Similarly, if the first warrant is invalid, then the second warrant is also invalid and the evidence seized pursuant to this warrant would have to be suppressed in a new trial.

### 3. *Jury Communication with Third Party*

Johnson contends that the trial court should have granted a mistrial or continuance when it was discovered that the mother of a witness for the State had spoken to a juror. Rather than conducting an examination of the jury members, the trial judge questioned Ms. Bass, the

mother of a witness, about her contact with the jury. Ms. Bass stated that she told one of the jurors that she was real cold, but insisted that she did not discuss this case.

The general rule is that the trial court is to determine whether any conversation between a jury member and a third party was prejudicial. In making this determination, it is not required that the trial judge question the juror. This decision is left to the discretion of the judge.

> A defendant in a criminal prosecution is constitutionally guaranteed a fair trial by an impartial jury, and in order to fully safeguard this protection, it is required that the jury render its verdict free from outside influence. Nevertheless, the mere fact that some conversation occurs between a juror and a witness for the State does not necessarily prejudice a defendant. The power to declare a mistrial is generally left to the sound discretion of the trial judge and ought to be exercised with the greatest caution, only for plain and obvious causes.

(Citations omitted.) *State v. Carrington*, 284 S.C. 610, 328 S.E. (2d) 119 (Ct. App. 1985).

Under the facts of this case, it is the opinion of this Court that the trial judge did not abuse his discretion by refusing to declare a mistrial.

For the reasons discussed above, the lower court is AFFIRMED on the Batson and juror communication issues. The search warrant issue is REMANDED for a hearing.

GREGORY, C.J., and HARWELL, CHANDLER and FINNEY, JJ., concur.