2332

The STATE, Respondent v. Terrance GUESS and Larry Jeffcoat, Appellants.

(457 S.E. (2d) 6)

Court of Appeals

*Deputy Chief Attorney Joseph L. Savitz, III* and *Asst. Appellate Defender Robert M. Pachak,* both of the *South Carolina Office of Appellate Defense,* Columbia, *for appellants.*

*Attorney General T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka,* and *Sr. Asst. Atty. Gen. Harold M. Coombs, Jr.,* Columbia; and *Sol. Walter M. Bailey, Jr.,* Summerville, *for respondent.*

Heard Mar. 9, 1995.

Decided Apr. 3, 1995.

HOWARD, Justice:

Terrance Guess and Larry Jeffcoat appeal their convictions for distribution of crack cocaine and distribution within one-half mile of a school, asserting trial error in the denial of their motion to dismiss the jury for racially discriminatory use by the State of its peremptory strikes in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. (2d) 69 (1986). We affirm.

Guess and Jeffcoat were tried together, thus affording the State ten peremptory strikes. *See* S.C. Code Ann. § 14-7-1110 (Supp. 1993). The State used only two strikes during the selection of the twelve-person jury, and one additional strike during selection of an alternate. Each strike was used to excuse black jurors, who are members of the same racially cognizable minority to which Guess and Jeffcoat belong.

Following the selection of the jury, Guess and Jeffcoat moved to dismiss the jury, alleging the strikes by the State were based upon race in violation of the constitutional rights

of both the defendants and the jurors. Finding that the stricken jurors were all of the same minority as that of Guess and Jeffcoat, the trial judge ruled they had established a prima facie *Batson* violation and required the State to articulate racially neutral reasons for its strikes. The State gave as its reasons for two of the three strikes that one juror had pending criminal charges for numerous crimes including assault and battery, burglary in the second degree, forgery and breach of trust, and the other juror was a day late in arriving for jury service. Guess and Jeffcoat do not attack the reasons advanced for the strike of these two jurors, but they challenge the reasons given for the third strike, that of juror #7, Mr. Brown.

The State asserted the following reason for the strike of this juror:

> "In the case of juror #7, that's Mr. Brown, I was present yesterday when the juror was qualified, and will all due respect, I felt like Mr. Brown was a little slow. Didn't really seem to know kinda what was going on. Very hesitant in his answers to your questions. I think he stood up once or twice in response either to your education question or something. There was some particular reason that he stood up, and my initial impression of him was that he really didn't have a good grasp of what was going on. I didn't feel like, given that, he would perform well for either side, that he could give a fair—a fair and articulate judgment."

In response, counsel for Guess and Jeffcoat argued they felt Mr. Brown was able to serve, as obviously did the court, since he was found qualified. Counsel pointed out that "[t]here were several members of the jury panel who seemed to have problems hearing various things or communicating what was going on [during jury qualification the previous day]."

In rebuttal, the State read into the record the solicitor's handwritten note made contemporaneously with jury qualification in which he placed next to Mr. Brown's name, and only his name, the word "slow" in parentheses, and the word "disabled" with a question mark.

Noting the jury was composed of six members of the same minority as Guess and Jeffcoat, three male and three female,

and six white jurors, the trial judge concluded the reasons for striking each juror, including juror #7, were racially neutral.

It is well settled that *Batson* proscribes the State from exercising its peremptory strikes in a racially discriminatory manner. In analyzing *Batson* issues, the Court initially adopted a three-prong inquiry: First, the defendant must make a prima facie showing that the State exercised such challenges on the basis of race. Second, if the requisite showing is made, the burden shifts to the State to articulate a race-neutral explanation for the strikes in question. Third, the trial court must determine whether the defendant has met the burden of proving purposeful discrimination. *State v. Green,* 306 S.C. 94, 96, 409 S.E. (2d) 785, 787 (1991) (citing *Hernandez v. New York,* 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed. (2d) 395 (1991)), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1566, 118 L.Ed. (2d) 212 (1992). Recently, our Supreme Court has amended these requirements by deleting the first inquiry, ruling that merely by making the *Batson* motion a prima facie showing has been made. *State v. Chapman,* 317 S.C. 302, 454 S.E. (2d) 317 (1995).

The State's reason for striking a juror must be applied in a racially neutral manner. *State v. Adams,* 307 S.C. 368, 415 S.E. (2d) 402 (1992); *State v. Johnson,* 302 S.C. 243, 395 S.E. (2d) 167 (1990). The State's explanation must be clear, related to the case to be tried, reasonably specific and legitimate. *State v. Grandy,* 306 S.C. 224, 411 S.E. (2d) 207 (1991). The explanation for striking a black juror "must be examined in light of the circumstances under which it is exercised, including an examination of the explanation offered for other strikes." *State v. Oglesby,* 298 S.C. 279, 280, 379 S.E. (2d) 891, 892 (1989). The composition of the jury is a relevant consideration. *State v. Dyar,* 317 S.C. 77, 452 S.E. (2d) 603 (1994) (citations omitted).

"Under *Hernandez* [500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed. (2d) 395], unless a discriminatory intent is inherent in the reason proferred, it will be deemed race-neutral." *State v. Green,* 306 S.C. at 97, 409 S.E. (2d) at 787. The defendant then has the burden to prove that the State's allegedly neutral reasons are pretext, having not been applied equally to white jurors. *State v. Johnson,* 302 S.C. 243, 395 S.E. (2d) 167; *State v. Oglesby,* 298 S.C. 279, 379 S.E. (2d) 891.

Typically, the decisive question becomes whether the State's race-neutral explanation for a peremptory challenge should be believed. *Hernandez*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed. (2d) 395. As *Hernandez* pointed out, there is seldom much evidence in the record bearing on that issue, and the trial court's findings regarding purposeful discrimination necessarily will rest largely on the evaluation of demeanor and credibility of counsel. *Id.* Therefore, those findings are given great deference and will not be set aside unless clearly erroneous. *Id.; State v. Dyar*, 317 S.C. 77, 452 S.E. (2d) 603; *Sumpter v. State*, 312 S.C. 221, 439 S.E. (2d) 842 (1994).

Demeanor has been upheld by many jurisdictions as a legitimate reason to strike a juror. See *Lockett v. State*, 517 So. (2d) 1346 (Miss. 1987), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed. (2d) 895 (1988), and cases cited therein. In this case the solicitor offered his observations of Brown's demeanor during qualification as a reason for the strike. The noted observations are a proper basis to question the capability of a juror to serve, since they involve communication and comprehension skills. As such, the reason is related to the case. Further exploration or explanation of the juror's conduct is virtually impossible given our present restrictions on voir dire, absent a comprehensive prequalification questionnaire. Counsel for Guess and Jeffcoat confirmed the appearance of "communication" difficulties by several jurors during qualification, and they did not argue Brown was not among those having difficulties.

Though the solicitor's description of Brown's actions was lacking in specificity, credibility was enhanced by his contemporaneous notes. The degree of specificity required to convince the trial judge that the reasons given were not pretext is a matter left largely to the trial court and is a function of many factors, including the reason advanced and all other circumstances. Where, as here, the State used only two of ten strikes, and the jury as seated included six members of the minority allegedly offended, the trial judge did not err by concluding the strike of juror Brown was race-neutral. Accordingly, the trial court's determination that the State did not violate *Batson* is

Affirmed.

SHAW and GOOLSBY, JJ., concur.