## 2416

The STATE, Respondent v. Kyle D. WATTS, Appellant.

(465 S.E. (2d) 359)

Court of Appeals

*Assistant Appellant Defender Robert M. Pachak, of South Carolina Office of Appellate Defense,* Columbia, *for appellant.*

*Attorney General T. Travis Medlock, Chief Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney*

General Harold M. Coombs, Jr., and *Assistant Attorney General William Edgar Salter, III*, Columbia; and *Solicitor W. Townes Jones, IV*, Greenwood, *for respondent.*

Heard Sept. 13, 1995.

Filed Nov. 13, 1995.

*Per Curiam:*

Kyle D. Watts appeals his conviction for distribution of crack cocaine. First, he contends the trial court erred in denying his motion to strike the jury under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. (2d) 69 (1986) because the State failed to give racially neutral reasons for striking two black jurors. Second, he claims the court erred in refusing to grant a mistrial after the prosecution twice asked whether Watts had been targeted in the police's investigation. We affirm.

## FACTS

Eleanor Savage, a special agent with the State Law Enforcement Division (SLED), testified that on March 3, 1993, she along with Special Agent Ray Lominack was assisting the Greenwood City Police Department with an ongoing, undercover narcotics investigation in Greenwood. They worked directly with Greenwood's Assistant Chief of Police Mike Butler and Detective Kevin Fallaw as well as with a confidential informant. Around 1:30 p.m., the group met at a predetermined point and discussed their plans for the undercover operation. The officers frisked the confidential informant and determined he did not have any weapons or drugs in his possession. Agent Savage outfitted herself with a beeper wire, a small transmitting device which allowed the other officers to perform audio surveillance of her and the confidential informant. As soon as they determined the beeper wire worked properly they went to the Green Street area in the city.

Agent Savage and the informant traveled together in one car while the other officers performed surveillance from two different, unmarked cars. When they reached Green Street, Agent Savage observed Watts and two or three other males standing in the front yard of a residence. Although Agent Savage had never met Watts, she had seen him before. He ap-

parently did not know she worked for SLED. Once Agent Savage stopped the car, the informant asked Watts a question, and Watts answered, nodded, and gestured for Agent Savage to approach him.

Agent Savage then got out her car and walked toward Watts who handed her a piece of crack cocaine. Agent Savage asked how much the crack cost, and Watts responded, "a twenty." After giving Watts a twenty-dollar bill, Agent Savage returned to her car and left the scene.

As she drove away, she gave a description of Watts's distinctive attire over the beeper wire. She reported he wore a purple and gold jacket with an eight-ball on the back, black pants, a chain necklace, and a gray hat with writing on the front of it. Assistant Chief Butler heard this transmission and immediately rode by the scene. He saw Watts, whom he had known for several years, wearing clothing identical to that described by Agent Savage.

Thereafter, all the officers met at their predetermined point. Agent Savage placed the crack cocaine watts sold her in an evidence bag and labeled it. Officers later arrested Watts. Agent Savage had no difficulty identifying Watts in court as the person she bought the crack cocaine from on March 3, 1993.

## I.

On appeal, Watts first contends the State exercised two of its peremptory strikes in a racially discriminatory manner. Watts maintains the court erred in refusing to quash the jury pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. (2d) 69 (1986) because the State did not articulate racially neutral reasons for striking the two back jurors. We disagree.

During jury selection, the State exercised three of its peremptory challenges against black jurors and two against white jurors. Watts objected to the State's strikes against the three black jurors, and requested a hearing to determine the propriety of those strikes under *Batson*. The assistant solicitor explained the eighth juror was struck because he was seen by members of the Solicitor's Office sitting in the area of the courtroom where Watts and other defendants sat, and someone from the Solicitor's staff had to ask him to move to the

area of the courtroom reserved for jurors. The assistant solicitor stated she struck the eleventh juror because members of his family had recently been indicted on federal drug charges. Finally, she said she struck the twelfth juror "simply because everyone else we had chosen to strike had been struck. We had to pick someone."

Watts accepted the State's articulated reason for striking the eleventh juror as racially neutral, but challenged the reasons advanced for striking the eighth and twelfth jurors. The trial court rejected Watts's argument and found the State exercised the strikes in a racially neutral manner.

It is well established that *Batson* prohibits the State for exercising its peremptory strikes in a racially discriminatory manner. When a party raises a *Batson* objection and requests a hearing, the trial court must hold a hearing to determine whether the peremptory strikes were properly exercised. *State v. Chapman*, 317 S.C. 302, 454 S.E. (2d) 317 (1995). The party exercising the strikes must then provide a racially neutral explanation for the use of the strikes. Unless the discriminatory intent is inherent in the explanation, the reason offered will be deemed race neutral. *State v. Green*, 306 S.C. 94, 409 S.E. (2d) 785 (1991), *cert. denied*, 503 U.S. 962, 112 S.Ct. 1566, 118 L.Ed. (2d) 212 (1992). While the explanation need not rise to the level justifying a challenge for cause, a racially neutral reason cannot be established by merely denying a discriminatory motive. *State v. Tomlin*, 299 S.C. 294, 384 S.E. (2d) 707 (1989).

In determining whether the explanation for the strike is adequate to rebut a prima facie case of discrimination, the trial judge should consider whether the reasons offered for the strike are: (1) neutral; (2) related to the case to be tried; (3) clear and reasonably specific, and (4) legitimate. *State v. Grandy*, 306 S.C. 224, 411 S.E. (2d) 207 (1991).[1]

---

[1] The United States Supreme Court recently held, in a per curiam opinion, that to rebut a prima facie case of discrimination, the proffered reason must only be facially neutral; the explanation need not be "persuasive, or even plausible." *Purkett v. Elem*, — U.S. —, 115 S.Ct. 1769, 131 L.Ed. (2d) 834 (1995). We are cognizant of the fact that a rule stated in a decision by the United States Supreme Court and based on the United States Constitution is binding on state courts under the Supremacy Clause. *See Henry v. City of Rock Hill*, 376 U.S. 776, 84 S.Ct. 1042, 12 L.Ed. (2d) 79 (1964); *see also* S.C. Const. art. V, § 9 ("The decisions of the Supreme Court shall bind the Court

If the proffered reason is found facially valid, the challenging party bears the burden of showing that the reason is merely pretext, and that race was the reason for the strike. *See State v. Johnson,* 302 S.C. 243, 395 S.E. (2d) 167 (1990); *State v. Oglesby,* 298 S.C. 279, 379 S.E. (2d) 891 (1989). Because the trial judge's findings regarding purposeful discrimination rest largely upon an evaluation of the credibility of the attorney making the strikes, we give those findings great deference. However, where the record does not support the attorney's stated reason for the strike, the trial court's findings must be overturned. *State v. Patterson,* 307 S.C. 180, 414 S.E. (2d) 155 (1992).

Here, the State indicated it struck the eighth juror because he was seen seated in the portion of the courtroom near the defendant and had to be told to move to the area reserved for jurors. This is a racially neutral and valid reason for striking the juror, and Watts failed to prove it was pretextual. *See State v. Wilder,* 306 S.C. 535, 413 S.E. (2d) 323 (1991) (solicitor's explanation that two blacks were struck from the jury because they reported late for jury duty established that strikes were racially neutral); *State v. Wright,* 304 S.C. 529, 405 S.E. (2d) 825 (1991) (solicitor's stated reason for striking black juror, his demeanor and apparent disinterest in the courtroom proceedings, was found racially neutral).

As relates to the twelfth juror, the trial judge ruled that the State was "required" to strike a certain number of jurors under the method he used for impaneling the jury, and thus the solicitor's explanation that she struck this juror because "everyone else [they] had chose to strike had been struck [and they] had to pick someone" was not evidence of a racial strike. Although the failure to advance any reason for striking a juror normally vitiates the strike and constitutes a *Batson* violation, *Grandy,* 306 S.C. at 227, 411 S.E. (2d) at 208,[2] under the circumstances of this case, we con-

of Appeals as precedents."). In light of this, we invite our Supreme court to review the apparent conflict between the United States Supreme Court's holding in *Purkett* and our Supreme Court's holding in *Grandy,* 306 S.C. 224, 411 S.E (2d) 207. However, until our Supreme Court adopts *Purkett's* more lenient standard, we are constrained to adhere to the stricter standard enunciated in *Grandy.*

[2] In *Grandy,* our Supreme Court concluded the solicitor failed to articulate a racially neutral explanation in his assertion that he excluded a prospective black juror because he wanted to seat other venirepersons.

clude there was no *Batson* violation since the judge required the parties to use all of their strikes, and there was otherwise no indication the State engaged in purposeful, invidious discrimination. *See Riddle v. State,* 314 S.C. 1, 443 S.E. (2d) 557, *cert. denied,* — U.S. —, 115 S.Ct. 518, 130 L.Ed. (2d) 424 (1994) (whether a *Batson* violation has occurred must be determined by examining the totality of the facts and circumstances in the record surrounding the strike); *Green,* 306 S.C. at 98, 409 S.E. (2d) at 788 (absent showing that solicitor intentionally exercised strike because of racial concerns or for a discriminatory purpose, the trial judge's finding that strike was not racially motivated should be given great deference on appeal).

Moreover, the composition of the jury panel supports the determination that the State did not exercise its peremptory strikes in a discriminatory manner. *See State v. Johnson,* 302 S.C. 243, 395 S.E. (2d) 167 (1990) (composition of the jury panel is a factor that may be considered when determining whether a party engaged in purposeful discrimination). In this case, the jury was composed of eight whites and four blacks. The first and last strikes exercised by the State were against white jurors. Therefore, considering all the relevant facts and circumstances, we agree with the trial court's conclusion that the State's exercise of its peremptory strikes did not violate *Batson.*

## II.

Watts next argues the trial court erred in refusing to grant a mistrial after the solicitor pursued a line of questioning which placed his character in issue. Specifically, he maintains that during the direct examination of Assistant Chief Butler, the assistant solicitor asked if Watts was the target of the investigation, and thereby raised an improper inference of Watts's propensity to commit criminal acts, and a legally spurious presumption of guilt in the minds of the jurors. The challenged questions and the objections directed to them appear in the following exchange taken from the trial transcript:

**By Ms. Krolak** [the assistant solicitor]:

**Q.** Did you know who was targeted at that particular buy—

**Mr. Wise** [defense counsel]: I would object to that.

**The Court:** I sustain the objection.

**By Ms. Krolak:**

**Q.** When a plan was introduced, were you involved in planning the operation?

**A.** Yes, ma'am.

**Q.** Was the defendant involved as a target—

**Mr. Wise:** I object to that, your honor.

**The Court:** Sustain the objection. Sustain the objection.

**Mr. Wise:** I do have a matter for the court.

Claiming the solicitor placed his character in issue by asking if he was targeted, and in essence, telling the jury he was a known drug dealer, Watts moved for a mistrial. The trial court instructed the assistant solicitor to refrain from questioning the witness about whether Watts was the target of the investigation, but denied the motion for a mistrial.

The granting of a mistrial is a matter within the sound discretion of the trial judge, and his discretion will not be disturbed on appeal absent an abuse of discretion amounting to an error of law. *State v. Washington*, 315 S.C. 108, 432 S.E. (2d) 448 (1992); *State v. Mcfadden*, 318 S.C. 404, 458 S.E. (2d) 61 (Ct. App. 1995). Because we conclude that no evidence whatsoever materialized as a result of the two objectionable questions and Watts suffered no prejudice, we hold the trial court did not abuse its discretion in refusing to grant a mistrial.

As the excerpted portion of the transcript shows, the trial court immediately sustained the objection to each question and did so before the witness could proffer an answer. We find the trial court did not abuse its discretion in denying the motion for a mistrial based on the asking of the questions which produced two general objections, two favorable court rulings, and no answer from the witness. *Cf. Gainey v. Tyner*, 259 S.C. 629, 631-32, 193 S.E. (2d) 525, 526-27 (1972) (the "mere asking of [a] question did not result in prejudice" where the witness's response to the question following counsel's objection and the trial court's overruling of it was "I don't know").

Moreover, the evidence of Watts's guilt is, in a word, overwhelming. Considering the overwhelming nature of the evidence of Watts's guilt, we do not believe that any error connected with the State's mere asking of the two questions in

issue was so prejudicial as to have reasonably affected the result of the trial or deprived him of a fair trial.

In applying the harmless error rule, the court must be able to declare the error had little, if any, likelihood of having changed the result of the trial and the court must be able to declare such belief beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed. (2d) 705 (1967) (the United States Supreme Court recognized that error of even constitutional magnitude may be harmless if, considering the entire record on appeal, the reviewing court finds beyond a reasonable doubt that the error did not contribute to the verdict). Under the facts of the present case, we hold there was little, if any, likelihood that the two unanswered questions, to which the trial court sustained Watts's objections, could have changed the result of the trial, and such belief is declared beyond a reasonable doubt by this court in accordance with the requirement of *Chapman*, 386 U.S. 18, 87 S.Ct. 824. *See State v. Mitchell*, 286 S.C. 572, 336 S.E. (2d) 150 (1985) (wherein our Supreme Court deemed harmless an error in the admission of hearsay testimony where notwithstanding the hearsay testimony, there was abundant evidence in the record from which the jury could have found the appellant guilty); *see also United States v. Peed*, 714 F. (2d) 7 (4th Cir. 1983) (no prejudice resulted from the jury's being told that the defendant had been a "target" of an investigation by the United States Attorney leading up to grand jury proceedings).

Accordingly, the judgment is affirmed.

Affirmed.

CURETON, GOOLSBY and HEARN, JJ., concur.