**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

The State, Appellant,

v.

Javon Dion Gibbs, Respondent.

Appellate Case No. 2017-001846

Appeal From Horry County
Larry B. Hyman, Jr., Circuit Court Judge.

Unpublished Opinion No. 2020-UP-244
Submitted May 8, 2020 – Filed August 19, 2020

**AFFIRMED**

Attorney General Alan McCrory Wilson, Senior Assistant Attorney General W. Edgar Salter, III, both of Columbia; and Solicitor Jimmy A. Richardson, II, of Conway, all for Appellant.

Chief Appellate Defender Robert Michael Dudek, of Columbia, for Respondent.

**PER CURIAM:** The State appeals the circuit court's order granting Javon Gibbs's pretrial motion to suppress Gibbs's phone records in his trial for kidnapping and murder. The circuit court found that the issuing magistrate did not have a substantial basis upon which to conclude that probable cause existed for the warrant to search

Gibbs's phone. The State argues the circuit court erred in its findings because the law at the time the warrant was issued was that historical cell site location information (CSLI) was not protected under the Fourth Amendment.[1] Further, the State argues even if the information was protected, the warrant affidavit in conjunction with the oral testimony from the pretrial hearing constituted sufficient probable cause for the warrant. In the alternative, the State argues that the good faith exception applies. We affirm.

## FACTS/PROCEDURAL HISTORY

This is a murder and kidnapping case in which the victim's body has not been recovered. Victim was reported missing on August 27, 2013, and on November 5, 2013, Horry County Police Department (HCPD) detective Jonathan Martin sought a warrant to search Gibbs's phone records. In the warrant's affidavit asserting probable cause, Detective Martin attested to the following:

> On 8/27/13[,] the mother of [Victim] reported him missing from 2918 Hwy 905 in the Conway section of Horry County. Family and friends were interviewed[,] including a close girlfriend[,] and the most recent contact they had with him was 8/25/13 by phone. This is not normal for him[,] and it is believed something happened to him. A subsequent search of the [Victim's] phone showed activity up to 0424 where the phone completely shut off in the Aynor area. His vehicle was located several days later completely burned[,] and other property was located on the side of different roadways. As of 11/5/13, [Victim] or his body have not been located. The phone number to be searched belongs to Javon Gibbs[,] who has been identified by many as being involved with his disappearance based on drug related incidents before his disappearance. The male denied the allegations and identified that he did not want to provide a DNA sample or take a polygraph to exclude him[self]. It is my belief that searching the records of Javon Gibbs will provide information regarding any contact with [Victim] and his whereabouts during the date and time [Victim] went missing.

---

[1] U.S. Const. amend IV.

The magistrate issued the search warrant. On December 6, 2014, Gibbs was arrested for murder and kidnapping, and subsequently indicted as charged on February 26, 2015. Gibbs filed multiple pretrial motions, including a motion to suppress his phone records. A pretrial hearing was held on August 30, 2017, before the circuit court. Gibbs was represented by counsel at the hearing.

On direct examination, Detective Martin testified that Samantha Hopkins (Victim's girlfriend), Jamal Fleming (Victim's friend), Marcus Smith (Victim's friend), and Shakeem Fore each provided information that Victim had an ongoing issue with Gibbs and Christopher Brown over a drug deal gone awry. Detective Martin stated that Victim, Gibbs, and Brown agreed to either purchase or sell drugs for $1,400. Gibbs and Brown supposedly took Victim's portion of the money ($600) and refused to give the money back.

Additionally, Detective Martin testified that Marcus Smith provided information on an incident involving Victim and Brown approximately a month before Victim went missing and before the aforementioned drug deal. Responding to a call of shots fired in a park, officers made contact with Victim, Brown, and Smith, who were all standing next to Victim's mother's car. With consent of Victim's mother, officers recovered a stolen gun from under the car's driver's side seat. Through interviews with all parties on the scene, Brown was subsequently arrested and charged for the gun. Smith was also arrested for an unrelated outstanding warrant. Because Victim was not arrested, Brown believed that Victim may have informed the police that the gun belonged to Brown. Detective Martin also testified to another incident at a store where Smith got into a fist fight with Brown in defense of Victim regarding the aforementioned drug deal. Detective Martin stated these incidents led to animosity between the groups.

Furthermore, Detective Martin mentioned that Victim and Gibbs communicated via Facebook regarding Brown and the drug deal. During their Facebook conversation, Victim told Gibbs that Gibbs needed to get away from Brown. Detective Martin testified that Gibbs provided a statement to HCPD denying being anywhere near Victim's home the night of the incident. Detective Martin also testified that the search of Gibbs's records was "not just to find out if he was the one with [Victim], but also to clear him [by demonstrating] that had he not been the one with [Victim] or around [Victim]'s residence."

On cross examination, Detective Martin confirmed that the only drug deal Gibbs and Victim were allegedly involved in together was the one incident in which

Victim's $600 had been taken by Brown and Gibbs. Moreover, he stated he had not discussed the reliability of any of the witnesses with the magistrate, nor did he give the magistrate the police report.

The court then questioned Detective Martin. Detective Martin revealed that during the issuance of the warrant, he informed the magistrate that Gibbs and Brown were best friends, they were in communication at the time Victim went missing, and that Brown's phone location was placed at Victim's house around this time.[2] Furthermore, Detective Martin advised that over the course of the investigation from August to November, HCPD obtained twenty-six (26) warrants. The warrants were issued by multiple magistrates, and Detective Martin could not recall whether he spoke to the magistrate with any specificity regarding the Facebook messages.[3]

On September 5, 2017, the circuit court issued an order granting Gibbs's motion to suppress the phone records. The court found that "the [a]ffidavit on its face did not establish probable cause [by] failing to set forth the source and its reliability of the facts alleged and failing to set forth facts as to why the police believed [Gibbs] committed a crime." Additionally the court found that the facts given to the magistrate to supplement the affidavit did not provide a substantial basis upon which to conclude that probable cause existed and that the supplementing testimony at the hearing failed to identify what crime Gibbs was believed to have committed. This appeal from the State follows.

## ISSUE ON APPEAL

Did the circuit court err in suppressing the CSLI by finding that the CSLI was protected under the Fourth Amendment, the search warrant affidavit lacked sufficient probable cause, and the good faith exception to the warrant requirement did not apply?

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). On appeals from a motion to suppress based on the Fourth Amendment, appellate courts apply a deferential standard of review and will reverse only if there is clear error. *State v. Moore*, 415

---

[2] HCPD conducted a search of Brown's phone records prior to searching Gibbs's phone.

[3] A search warrant for Facebook was issued by a different magistrate.

S.C. 245, 251, 781 S.E.2d 897, 900 (2016). We must affirm if there is any evidence to support the trial court's decision. *State v. Provet*, 405 S.C. 101, 107, 747 S.E.2d 453, 456 (2013). "The duty of the reviewing court is to ensure the issuing magistrate had a substantial basis upon which to conclude that probable cause existed." *Baccus*, 367 S.C. at 50, 625 S.E.2d at 221.

## LAW/ANALYSIS

## SUPPRESSION OF CSLI

In its initial brief, the State argues the circuit court (1) erred as a matter of law by finding that Gibbs's cell site location information (CSLI) was protected by the Fourth Amendment and that Gibbs had a reasonable expectation of privacy in his CSLI, (2) abused its discretion in finding the search warrant affidavit lacked sufficient probable cause, and (3) erred in finding the good faith exception did not apply, and therefore, the circuit court erred in suppressing the CSLI. However, while the matter was pending on review, the Supreme Court of the United States made clear that "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through [historical] CSLI." *Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018). The Court held that the acquisition of the defendant's CSLI over a seven-day period was a "search within the meaning of the Fourth Amendment." *Id.* at 2220. Therefore, "the Government must generally obtain a warrant supported by probable cause before acquiring such records." *Id.* at 2221.

In its reply brief, the State argues that the Court's ruling in *Carpenter* should not affect the analysis of this case and reiterates that the circuit court erred in suppressing the CSLI. First, the State argues that because *Carpenter* leaves open the question of whether the collection of CSLI for less than seven days is afforded protection under the Fourth Amendment, this court should interpret *Carpenter* to allow law enforcement to conduct a warrantless short-term collection of CSLI—a period of five days in the current matter. Second, the State argues that the officers involved acted in objectively reasonable good faith based on the law at the time of the warrant.

Gibbs argues the circuit court correctly found that he had a legitimate expectation of privacy and that *Carpenter* settled the issue of whether the State's collection of Gibbs's CSLI invoked Fourth Amendment scrutiny. Next, Gibbs argues that "the affidavit and search warrant process []did not provide probable cause for the magistrate to determine there was a fair probability that [Gibbs] committed a

crime based on information given by individuals the government deemed reliable." Because the affidavit did not allege Gibbs committed any crime, Gibbs argues there can be no assertion that the affidavit stated that there was a fair probability that evidence of a crime would be found if the warrant was issued. Lastly, Gibbs argues the "sloppiness" of the State's affidavit, including the failure to attest to the reliability of its "sources" of information, precludes the State from any assertion of a good faith exception pursuant to *Leon*.[4] We hold the circuit court did not err by suppressing the CSLI.

### A. CSLI

Originally, the State asserted that the circuit court was bound by the Fourth Circuit opinion in *United States v. Graham*, which held that individuals do not have a reasonable expectation of privacy in CSLI. 824 F.3d 421, 427 (4th Cir. 2016). Therefore, the State argues, the circuit court erred as a matter of law. We disagree. There is no South Carolina case law adopting *Graham*'s holding that individuals do not have a reasonable expectation of privacy in CSLI. Therefore, *Graham* was not controlling at the time of the hearing, and the circuit court did not err as a matter of law in finding as such. *See Ins. Fin. Servs., Inc. v. S.C. Ins. Co.*, 282 S.C. 144, 146, 318 S.E.2d 10, 11 (1984) ("[The South Carolina Supreme Court] is not bound by the rulings of the Circuit Court of Appeals . . . ."); *Limehouse v. Hulsey*, 404 S.C. 93, 108–09, 744 S.E.2d 566, 575 (2013) ("Although [the South Carolina Supreme Court] often defers to Fourth Circuit decisions interpreting federal law, . . . it is not obligated to do so . . . ."); *Johnson v. Williams*, 568 U.S. 289, 305 (2013) (stating federal courts of appeals do not bind state supreme courts when they decide federal constitutional questions). Furthermore, "[n]ewly announced rules of constitutional criminal procedure must apply retroactively to all cases, 'pending on direct review or not yet final, with no exception for cases in which a new rule constitutes a "clear break" with the past.'" *Narciso v. State*, 397 S.C. 24, 31, 723 S.E.2d 369, 372 (2012) (quoting *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)). Accordingly, *Carpenter* "applies retroactively to this case, and [Gibbs] may invoke its rule of substantive Fourth Amendment law." *Narciso*, 397 S.C. at 31, 723 S.E.2d at 372.

Next, the State argues *Carpenter* leaves the door open for this court to hold that the State's acquisition of Gibbs's five-day CSLI does not constitute a search. In *Carpenter*, the parties suggested "as an alternative to their primary submissions that the acquisition of CSLI becomes a search only if it extends beyond a limited period." 138 S. Ct. at 2217 n.3. The defendant proposed a 24-hour cutoff, while the

---

[4] *United States v. Leon*, 468 U.S. 897 (1984).

Government suggested a seven-day cutoff. *Id.* The Court declined to decide whether there is a limited period of time for which the Government can obtain CSLI without Fourth Amendment scrutiny. *Id.* ("[W]e need not decide whether there is a limited period for which the Government may obtain an individual's historical CSLI free from Fourth Amendment scrutiny, and if so, how long that period might be. It is sufficient for our purposes today to hold that accessing seven days of CSLI constitutes a Fourth Amendment search.").

The CSLI that can be obtained by authorities over a five-day period is of the sort that led the majority in *Carpenter* to conclude that individuals have a legitimate expectation of privacy in the information. The Court reasoned that a person has a reasonable expectation of privacy in CSLI because the nature of CSLI is especially revealing. *Carpenter*, 138 S. Ct. at 2219. "[T]ime-stamped data provides an intimate window into a person's life, revealing not only his particular movements, but through them his 'familial, political, professional, religious, and sexual associations.'" *Id.* at 2217 (quoting *United States v. Jones*, 565 U.S. 400, 415 (2012) (Sotomayor, J., concurring)); *see id.* at 2218 ("A cell phone faithfully follows its owner beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales."). Allowing CSLI collection for a period of five days does not adequately curtail the Court's privacy concerns so as to render the five-day CSLI collection not a search pursuant to the Fourth Amendment. *See id.* Therefore, we hold that the CSLI collection in this matter constitutes a search.

## B. Warrant Sufficiency

The Fourth Amendment of the United States Constitution provides that no warrant shall be issued but upon probable cause, supported by oath or affirmation. U.S. Const. amend. IV. Section 17-13-140 of the South Carolina Code (2014) states that a search warrant may be issued to search for and seize property tending to show that a particular person committed a criminal offense. "[S]earch warrants may be issued 'only upon affidavit sworn to before the magistrate . . . establishing the grounds for the warrant.'" *State v. Bellamy*, 336 S.C. 140, 143, 519 S.E.2d 347, 348 (1999) (quoting § 17-13-140). "Oral testimony may also be used in this state to supplement search warrant affidavits which are facially insufficient to establish probable cause." *State v. Jones*, 342 S.C. 121, 128, 536 S.E.2d 675, 678–79 (2000).

"When reviewing a magistrate's decision to issue a search warrant, [the reviewing court] must consider the totality of the circumstances." *Jones*, 342 S.C. at 126, 536 S.E.2d at 678.

The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, *including the "veracity" and "basis of knowledge" of persons supplying hearsay information*, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Bellamy*, 336 S.C. at 143, 519 S.E.2d at 348 (emphasis added) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "The duty of the reviewing court is to ensure the issuing magistrate had a substantial basis upon which to conclude that probable cause existed." *Baccus*, 367 S.C. at 50, 625 S.E.2d at 221. "A warrant is supported by probable cause if, given the totality of the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found . . . ." *State v. Kinloch*, 410 S.C. 612, 617, 767 S.E.2d 153, 155 (2014). "[I]n passing upon the validity of the warrant, a reviewing court may consider only information brought to the magistrate's attention." *State v. Owen*, 275 S.C. 586, 588, 274 S.E.2d 510, 511 (1981), *abrogated on other grounds by Gates*, 462 U.S. at 238.

Affidavit Sufficiency

The State argues the affidavit underlying the search warrant set forth sufficient information to support a probable cause finding. We disagree.

First, the affidavit fails to mention what crime or offense police believed Gibbs committed. *See* § 17-13-140 (stating, in part, a search warrant may be issued to search for and seize property "tending to show that a particular person *committed a criminal offense*") (emphasis added). Affidavits that fail to set forth facts as to why police believe a suspect committed a particular offense are defective. *See Baccus*, 367 S.C. at 52, 625 S.E.2d at 222 (finding an affidavit in support of a search warrant defective because the affidavit failed to set forth any facts as to why police believed the defendant committed the charged crime); *State v. Weston*, 329 S.C. 287, 291–92, 494 S.E.2d 801, 803 (1997) (same); *State v. Smith*, 301 S.C. 371, 373, 392 S.E.2d 182, 183 (1990) (same). The affidavits in the aforementioned cases *explicitly* mentioned that a crime took place. *See e.g., Baccus*, 367 S.C. at 51, 625 S.E.2d at 221. Nevertheless, our supreme court held that the affidavits must set forth facts as to *why* police believe the defendant was the individual to commit the charged crime. *See id.*

Here, the affidavit fails to even set forth *the crime* police believed transpired.[5] As such, the affidavit necessarily fails to set forth *why* police believed Gibbs committed any crime. *Baccus*, 367 S.C. at 52, 625 S.E.2d at 222. ("This affidavit fails to set forth any facts as to why police believed [the defendant] committed the crime. . . . Given the totality of the circumstances, we conclude the issuing magistrate did not have a substantial basis to find probable cause for a search of [the defendant]'s residence . . . ."). While the affidavit states vaguely why police believed Gibbs was *involved* with Victim's disappearance, it fails to mention what *crime* Gibbs is believed to have committed. *See id.* Plainly stated, police failed to allege a crime for which probable cause for the warrant was needed. *See* § 17-13-140 (stating, in part, a search warrant may be issued to search for and seize property "tending to show that a particular person committed a criminal offense"). Furthermore, the affidavit merely expressed a belief that Gibbs's phone records would provide information regarding any contact the Victim may have had with Gibbs and Gibbs's whereabouts the night of Victim's disappearance.

Next, the affidavit fails to address "the 'veracity' and 'basis of knowledge' of persons supplying hearsay information." *See Bellamy*, 336 S.C. at 143, 519 S.E.2d at 348 (quoting *Gates*, 462 U.S. at 238). The affidavit fails to identify the "many" individuals who identified Gibbs as being involved in Victim's disappearance, fails to give any details regarding the "drug related incidents," and makes no showing of the reliability of these individuals. *See State v. Philpot*, 317 S.C. 458, 461, 454 S.E.2d 905, 907 (Ct. App. 1995) (finding an affidavit insufficient when it failed to attest to a confidential informant's reliability). Looking at the four corners of the affidavit, there is no information from which a court could conclude the witnesses

---

[5] The affidavit reads in relevant part:

> The phone number to be searched belongs to Javon Gibbs[,] *who has been identified by many as being involved with [Victim's] disappearance based on drug related incidents before his disappearance.* The male denied the allegations and identified that he did not want to provide a DNA sample or take a polygraph to exclude him. *It is my belief that searching the records of Javon Gibbs will provide information regarding any contact with [Victim] and his whereabouts during the date and time [Victim] went missing.*

(emphases added).

were reliable. *See State v. Robinson*, 415 S.C. 600, 605, 785 S.E.2d 355, 357–58 (2016) (finding the contents of a search warrant's affidavit sufficient on its face to provide the court a substantial basis to believe the confidential informant was reliable because the affidavit provided that: (1) the HCPD, (2) had a confidential informant, (3) who bought cocaine, (4) from the subject home, and (5) the informant had made previous purchases from the home).

Having concluded that the search warrant affidavit is facially insufficient to establish probable cause, we will now look to oral testimony. *Jones*, 342 S.C. at 128, 536 S.E.2d at 678–79 ("Oral testimony may also be used in this state to supplement search warrant affidavits [that] are facially insufficient to establish probable cause.").

Oral Testimony

The State argues that the supplementary testimony provided at the pretrial hearing, when combined with the affidavit, constitutes sufficient probable cause for the issuance of the search warrant. We disagree.

The State conceded at the hearing that it was difficult to say exactly what was told to the magistrate. Detective Martin testified that police officials went to many different magistrates to obtain the twenty-six warrants issued during the course of the investigation of Victim's disappearance. Nevertheless, Detective Martin testified definitively that the magistrate knew about: the relationship Victim had with Gibbs and Brown, the botched drug deal and the related confrontations, and the fact that Gibbs communicated via phone with Brown at the time of the Victim's disappearance.

However, the State was unable to confirm at the pretrial hearing that the magistrate was advised of the crime police believed Gibbs committed. *See* § 17-13-140 (stating, in part, a search warrant may be issued to search for and seize property "tending to show that a particular person committed a criminal offense"); *Baccus*, 367 S.C. at 52, 625 S.E.2d at 222 (finding an affidavit in support of a search warrant defective because the affidavit failed to set forth any facts as to why police believed the defendant committed the charged crime). When asked by the court what crime the affidavit was offered as probable cause of, the State responded, "all of it's probable cause to [Victim's] disappearance." The State then added: "[Detective Martin]'s looking at it as a kidnapping, possible murder." Further, Detective Martin testified that he was seeking the CSLI "not just to find out if [Gibbs] was the one with [Victim], but also to clear him [by demonstrating] that he

*had not been* the one with [Victim] or around [Victim]'s residence." Based on the statements provided by Detective Martin, HCPD did not appear to have a strong belief that Gibbs was involved in a crime at the time the warrant was issued. The fact that the State responded that the affidavit was meant to establish probable cause for Victim's "disappearance" provides support for Gibbs's assertion that the State had many theories regarding what happened to Victim and was "fishing" for information.

Furthermore, Detective Martin conceded that he did not go through reliability of the witnesses with the magistrate. Nevertheless, in considering the totality of the circumstances, "[a] deficiency in one of the elements of veracity and reliability may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *State v. Dupree*, 354 S.C. 676, 685, 583 S.E.2d 437, 442 (Ct. App. 2003). The sheer number of witnesses who attested to the botched drug deal, coupled with the Facebook messages, corroborate the drug deal and the drug related incidents. However, these witnesses' beliefs that Gibbs was involved in Victim's disappearance due to the botched drug deal does not bolster the reliability of their tip, and there is no "substantial basis for crediting th[is] hearsay." *United States v. Ventresca*, 380 U.S. 102, 108 (1965) (quoting *Jones v. United States*, 362 U.S. 257, 272 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83, 85 (1980)). There was no testimony that Gibbs made any threats to harm Victim or that any of the witnesses had actual knowledge that Gibbs was involved in either the murder or kidnapping of Victim.

Accordingly, the oral testimony was not enough to overcome the insufficiency of the warrant affidavit. Therefore, the evidence does not show that the magistrate had a substantial basis upon which to conclude that probable cause existed. *Baccus*, 367 S.C. at 50, 625 S.E.2d at 221 ("The duty of the reviewing court is to ensure the issuing magistrate had a substantial basis upon which to conclude that probable cause existed."); *Dupree*, 354 S.C. at 684, 583 S.E.2d at 441 ("In determining the validity of the warrant, a reviewing court may consider only information brought to the magistrate's attention.").

### C. Good Faith

The State argues that the circuit court erred by finding that the good faith exception to the warrant requirement did not apply. We disagree.

Initially, the State argued that "law enforcement acted in objectively good faith reliance upon the order that was issued." In *Leon*, the Supreme Court held that

the Fourth Amendment exclusionary rule does not bar the admission of evidence obtained by officers acting in reasonable reliance on a search warrant that was issued by a detached and neutral magistrate but ultimately found to be invalid. 468 U.S. at 922. However, "[r]eviewing courts will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'" *State v. Johnson*, 302 S.C. 243, 248, 395 S.E.2d 167, 170 (1990) (quoting *Leon*, 468 U.S. at 915). "Suppression is appropriate . . . when an affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Weston*, 329 S.C. at 293, 494 S.E.2d at 804 (1997) (quoting *Leon*, 468 U.S. at 923). "Therefore, the good-faith exception would not apply." *Id.*

As indicated in Section B, neither the affidavit nor oral testimony provided the magistrate with a substantial basis for determining the existence of probable cause because the affidavit did not allege that a crime was committed—nor did it allege that police believed Gibbs committed any crime. *See* § 17-13-140 (stating, in part, a search warrant may be issued to search for and seize property "tending to show that a particular person committed a criminal offense"); *Baccus*, 367 S.C. at 52, 625 S.E.2d at 222 (finding an affidavit in support of a search warrant defective because the affidavit failed to set forth any facts as to why police believed the defendant committed the charged crime). Further, Detective Martin admittedly did not attest to the witnesses' veracity and reliability or the basis of their knowledge. Therefore, the good faith exception would not apply. *Weston*, 329 S.C. at 293, 494 S.E.2d at 804 (finding the good faith exception did not apply in a case in which the warrant affidavit failed to set forth any facts as to why police believed the defendant committed the crime); *Johnson*, 302 S.C. at 248, 395 S.E.2d at 170 ("[R]eviewing courts will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'" (quoting *Leon*, 468 U.S. at 915)).

Alternatively, the State argues that the good faith exception applies because the law at the time of the collection of the CSLI was that a warrant was not required. The State cites *United States v. Chavez* for its assertion. 894 F.3d 593, 608 (4th Cir. 2018). *Chavez* held that "[w]hile *Carpenter* is obviously controlling going forward, it can have no effect on [the defendant's] case." 894 F.3d at 608. "The exclusionary rule's 'sole purpose . . . is to deter future Fourth Amendment violations." *Id.* (quoting *Davis v. United States*, 564 U.S. 229, 236–37 (2011)). "Thus, when investigators 'act with an objectively "reasonable good-faith belief" that their conduct is lawful,' the exclusionary rule will not apply." *Id.* The *Chavez* court held because

investigators reasonably relied on the law at the time, which allowed them to obtain CSLI via court order instead of a warrant, they acted in good faith. *Id.*

We believe the current matter is easily distinguishable from *Chavez* and similar cases applying the good faith exception to warrantless CSLI acquisitions. In that line of cases, the law enforcement official(s) relied on either voluntary disclosures from the wireless providers or a court order, each pursuant to the Stored Communications Act (SCA),[6] instead of a search warrant. The SCA contains a provision allowing government officials to obtain court orders compelling wireless providers to disclose CSLI and related data. § 2703(c)(1)(B). A court is allowed to issue the order upon a showing of "specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are *relevant* and material to an ongoing criminal investigation." § 2703(d) (emphasis added). This is a lesser showing than the probable cause required for a search warrant. *See id.*; *United States v. Sokolow*, 490 U.S. 1, 7 (1989) ("[P]robable cause means 'a fair probability that contraband or evidence of a crime will be found.'" (quoting *Illinois v. Gates*, 462 U.S. at 238)). In *Chavez*, government officials relied on section 2703—and its reduced burden—to procure the defendant's wireless records. 894 F.3d at 608.

Here, there is no question that HCPD relied on a *search warrant* as opposed to voluntary disclosures from a wireless provider—because that provider explicitly denied HCPD's request for voluntary disclosures. Furthermore, HCPD obtained a warrant and not an order pursuant to the SCA. HCPD could not have reasonably relied on a law or procedure that it did not use. *See Chavez* 894 F.3d at 608 (holding that the good faith exception applied because investigators reasonably relied on a provision of the Stored Communications Act for its warrantless search). Accordingly, the court did not err by finding that the good faith exception did not apply in this matter.

## CONCLUSION

Based on the foregoing, the circuit court's order is

**AFFIRMED.**[7]

**LOCKEMY, C.J., and GEATHERS and HEWITT, JJ., concur.**

---

[6] 18 U.S.C.A. §§ 2701–13 (2015 & Supp. 2020).
[7] We decide this case without oral argument pursuant to Rule 215, SCACR.