775 S.E.2d 416

The STATE, Respondent,

v.

Thomas STEWART, Appellant.

Appellate Case No. 2012–213655.
No. 5331.

Court of Appeals of South Carolina.

Heard April 14, 2015.
Decided July 15, 2015.
Rehearing Denied Aug. 20, 2015.

310

Jarrett O'Connor Coco, of Nelson Mullins Riley & Scarborough, LLP, and Chief Appellate Defender, Robert Michael Dudek, of Columbia, for appellant.

Attorney General, Alan McCrory Wilson, Chief Deputy Attorney General, John W. McIntosh, Senior Assistant Deputy Attorney General, Donald J. Zelenka, all of Columbia, and Solicitor William Benjamin Rogers, Jr., of Bennettsville, for respondent.

SHORT, J.

Thomas Stewart appeals his convictions for murder and possession of a weapon during the commission of a violent crime. He argues the trial court erred in (1) finding the State's use of preemptory challenges did not violate *Batson v.*

*Kentucky*[1]; (2) overruling his objection and failing to correct the State's remarks to the jury that use of a deadly weapon implied malice because the jury was charged with the lesser included offenses of murder and self-defense; and (3) allowing the State to enter unfairly prejudicial character evidence. We reverse and remand.

## FACTS

Stewart was involved in an extra-marital affair with Bellanie Clyburn for eight years.[2] In April 2009, Clyburn violently attacked Stewart's wife, Melissa, with a lug wrench. Clyburn pleaded guilty to assault and served several weeks of jail time. She was released from jail mid-December 2009, and Stewart spent several days with Clyburn after her release. On December 29, 2009, Clyburn filed a petition for a restraining order against Stewart and signed an affidavit for an arrest warrant for Stewart for trespassing.

During the morning of January 1, 2010, Stewart went to Clyburn's house. Stewart testified he and Clyburn argued, and she stabbed him with a knife.[3] Stewart also said Clyburn sprayed him with pepper spray. Stewart testified he was able to get a knife, and Clyburn attacked him outside the house as he was trying to get away.[4] As a result of the struggle, Clyburn was stabbed 39 times and later died from her injuries. After the fight, Stewart fled to a nearby park, and police arrested him there shortly afterwards. Police found two knives and a can of pepper spray in Clyburn's yard.

---

1. 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

2. The trial transcript and the State's brief spelled her name "Bellany," but the indictments and the petition for a restraining order that she signed, spelled her name "Bellanie."

3. The arresting officer testified Stewart told him he entered Clyburn's house with a knife; Clyburn pepper sprayed him after they had an argument; Clyburn managed to get the knife from him and run outside; and he ran outside after her and attacked her again. Stewart told the officer he "lost it over love," and wanted to know how much "time he was looking at."

4. A witness testified she saw Stewart stabbing Clyburn, and Clyburn was trying to get away from Stewart but he kept pulling her back. The witness did not see Clyburn attacking Stewart. She heard Stewart say, "I'm going to kill you," while he was stabbing Clyburn.

A trial was held December 3–6, 2012. The jury found Stewart guilty of murder and possession of a weapon during the commission of a violent crime. The court sentenced him to life in prison plus five years to be served consecutively. This appeal followed.

## STANDARD OF REVIEW

 In criminal cases, this court sits to review errors of law only, and is bound by the trial court's factual findings unless those findings are clearly erroneous. *State v. Edwards*, 384 S.C. 504, 508, 682 S.E.2d 820, 822 (2009). Thus, on review, the court is limited to determining whether the trial court abused its discretion. *Id.* An abuse of discretion occurs when the court's decision is unsupported by the evidence or controlled by an error of law. *State v. Black*, 400 S.C. 10, 16, 732 S.E.2d 880, 884 (2012). The appellate court "does not re-evaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the trial court's ruling is supported by any evidence." *Edwards*, 384 S.C. at 508, 682 S.E.2d at 822.

## LAW/ANALYSIS

### I. Preemptory Challenges

Stewart argues the trial court erred in finding the State's use of preemptory challenges did not violate *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We agree.

 In *Batson*, 476 U.S. at 89, 106 S.Ct. 1712, the Supreme Court of the United States held the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States forbids a prosecutor from challenging potential jurors solely on account of their race or on the assumption that African American jurors as a group will be unable to impartially consider the State's case against an African American defendant. In *Georgia v. McCollum*, 505 U.S. 42, 59, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), the Supreme Court held the Constitution also prohibits a criminal defendant from engaging in purposeful racial discrimination in the exercise of peremptory challenges. Additionally, the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States prohibits the striking of a potential juror based on race

or gender. *State v. Evins,* 373 S.C. 404, 415, 645 S.E.2d 904, 909 (2007). When one party strikes a member of a cognizable racial group or gender, the trial court must hold a *Batson* hearing if the opposing party requests one. *State v. Haigler,* 334 S.C. 623, 629, 515 S.E.2d 88, 90 (1999).

In *State v. Giles,* our supreme court explained the proper procedure for a *Batson* hearing:

First, the opponent of the peremptory challenge must make a prima facie showing that the challenge was based on race. If a sufficient showing is made, the trial court will move to the second step in the process, which requires the proponent of the challenge to provide a race neutral explanation for the challenge. If the trial court finds that burden has been met, the process will proceed to the third step, at which point the trial court must determine whether the opponent of the challenge has proved purposeful discrimination.

407 S.C. 14, 18, 754 S.E.2d 261, 263 (2014) (internal citations omitted).

 Merely denying a discriminatory motive is insufficient; however, the proponent of the strike need only present a race or gender neutral reason. *State v. Casey,* 325 S.C. 447, 451–52, 481 S.E.2d 169, 171–72 (Ct.App.1997). "[A] 'legitimate reason' is not a reason that makes sense, but a reason that does not deny equal protection." *Purkett v. Elem,* 514 U.S. 765, 769, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). The explanation "need not be persuasive, or even plausible, but it must be clear and reasonably specific such that the opponent of the challenge has a full and fair opportunity to demonstrate pretext in the reason given and the trial court to fulfill its duty to assess the plausibility of the reason in light of all the evidence with a bearing on it." *Giles,* 407 S.C. at 21–22, 754 S.E.2d at 265. "The burden of persuading the court that a *Batson* violation has occurred remains at all times on the opponent of the strike." *Evins,* 373 S.C. at 415, 645 S.E.2d at 909. The opponent of the strike must show the race or gender-neutral explanation was mere pretext, which generally is established by showing the party did not strike a similarly-situated member of another race or gender. *Haigler,* 334 S.C. at 629, 515 S.E.2d at 91.

During jury selection, the State used all five of its peremptory strikes, four of which were to strike African American jurors. The impaneled jury was composed of two African Americans and ten Caucasians. Stewart objected, and the court held a *Batson* hearing. The four African American jurors struck by the State were Jurors 33, 101, 117, and 126.

The State gave its reasons for striking the jurors. The State asserted it struck Juror 33 because law enforcement informed the State he had prior domestic issues involving his then girlfriend, who was now his wife. The State excused Juror 101 because he had a prior arrest for possession of cocaine and, although the charge was nolle prossed, it was prosecuted by the Solicitor's Office. The State dismissed Juror number 117 because she was unemployed and knew Clyburn. Juror number 126 was excused because she was late and appeared disinterested.

Stewart argued the State's reasons for striking the four jurors were pretextual. He asserted the court asked the jury panel if any of them had any charges against them, and Juror 33 did not answer. As to Juror 101, Stewart asserted the State did not strike Juror 131, who had a charge for assault and battery with intent to kill that was nolle prossed, or Juror 105, who had a conviction or an arrest for bad checks and simple assault. Therefore, Stewart maintained Jurors 131 and 105, both Caucasians, were similarly-situated to Jurors 33 and 101. Stewart argued the State struck Juror 117 for being unemployed and having gone to school with Clyburn, yet the State did not strike Juror 128 even though Clyburn's family frequented her workplace. Finally, Stewart argued he was not aware Juror 126 was late to court. However, the Court stated it observed Juror 126 was late returning from a break.

The court denied Stewart's *Batson* motion. It ruled the State's reason for striking Juror 101 was permissible because case law supports dismissing a juror who had a previous negative relationship with law enforcement. The court applied the same reasoning to Juror 33, considering his past domestic issues involving law enforcement. As to Juror 126, who was late and appeared disinterested, the court ruled this was a valid reason and a permissible strike. Further, as to Juror 117, although the court ruled the fact that the juror was

unemployed was not a valid reason, it found the State's reason, the juror had gone to school with Clyburn, was a valid reason for the strike.

Stewart argues the trial court did not comply with the third step in *Batson.* He asserts the court was required to proceed to the third step unless discriminatory intent was inherent in the explanation provided by the State, which it was not.

"Whether a *Batson* violation has occurred must be determined by examining the totality of the facts and circumstances in the record." *Edwards,* 384 S.C. at 509, 682 S.E.2d at 822. Under some circumstances, the explanation given by the proponent may be so fundamentally implausible the trial judge can find the explanation was mere pretext, even without a showing of disparate treatment. *Haigler,* 334 S.C. at 629, 515 S.E.2d at 91. "The trial judge's findings of purposeful discrimination rest largely on his evaluation of demeanor and credibility." *Edwards,* 384 S.C. at 509, 682 S.E.2d at 823. "Often the demeanor of the challenged attorney will be the best and only evidence of discrimination, and an 'evaluation of the [attorney's] state of mind based on demeanor and credibility lies peculiarly within a trial judge's province.' " *Id.* (quoting *Hernandez v. New York,* 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). The judge's findings regarding purposeful discrimination are given great deference and will not be set aside by this court unless clearly erroneous. *Evins,* 373 S.C. at 416, 645 S.E.2d at 909–10. "This standard of review, however, is premised on the trial court following the mandated procedure for a *Batson* hearing." *State v. Cochran,* 369 S.C. 308, 312, 631 S.E.2d 294, 297 (Ct.App.2006). "[W]here the assignment of error is the failure to follow the *Batson* hearing procedure, we must answer a question of law. When a question of law is presented, our standard of review is plenary." *Id.* at 312–13, 631 S.E.2d at 297.

In *State v. Wilder,* 306 S.C. 535, 538, 413 S.E.2d 323, 325 (1991), our supreme court held a solicitor may strike a juror based on their demeanor and disposition. The court found the State's explanation that it struck two African Americans from the jury because they reported late for jury duty was racially neutral, even though a Caucasian juror, who also reported late, was seated and was appointed as the fore-

person. *Id.* Here, Stewart did not allege there was a similarly-situated juror to Juror 126, who was late and appeared disinterested, that the State did not strike. Therefore, we find the State's strike of Juror 126 was permissible.

As to Jurors 33 and 101, Stewart asserted the State did not strike Juror 131, who had a charge for assault and battery with intent to kill that was nolle prossed, or Juror 105, who had a conviction or an arrest for bad checks and simple assault. Although Stewart showed the State did not strike similarly-situated Caucasian jurors, the court found the State's reasons for striking Jurors 33 and 101 were permissible because case law supports dismissing a juror who had a previous negative relationship with law enforcement. The court seemed to find it relevant that Juror 33 had past domestic issues involving law enforcement. However, even though the State offered a racially-neutral explanation for striking the African American jurors, the State negated the reason by seating similarly-situated Caucasian jurors. *See Miller–El v. Dretke*, 545 U.S. 231, 241, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005) ("If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson*'s third step."); *State v. Oglesby*, 298 S.C. 279, 281, 379 S.E.2d 891, 892 (1989) (finding the solicitor negated his neutral reason when he seated a white female juror who was similarly situated); *id.* ("In this case, an examination of the circumstances shows that the solicitor's originally neutral reason was proven to be a pretext because it was not applied in a neutral manner."). Therefore, we find the State's strikes of Jurors 33 and 101 were not permissible.

Likewise, as to Juror 117, Stewart asserted the State struck Juror 117, but did not strike Juror 128 even though Clyburn's family frequented her workplace. The trial court found the State's reason that the juror had gone to school with Clyburn was a valid reason for the strike.[5] Al-

---

5. The State's reason for striking Juror 117 was two-fold: she was unemployed and she knew Clyburn. The trial court ruled that the fact that Juror 117 was unemployed was not a valid reason to strike her. We find this was error because our courts have held unemployment is a

though we find a difference between a juror having attended school with Clyburn and Clyburn's family frequenting a juror's workplace, we note they are similar enough to have warranted further review by the court. *See State v. Scott,* 406 S.C. 108, 115, 749 S.E.2d 160, 164 (Ct.App.2013) ("For the purpose of demonstrating potential jurors are similarly situated under *Batson,* potential jurors are not required to be 'identical in all respects.' " (quoting *Miller–El,* 545 U.S. at 247 n. 6, 125 S.Ct. 2317)); *id.* ("[I]n determining whether potential jurors are similarly situated, our courts have focused their inquiry on whether there are meaningful distinctions between the individuals compared."). Therefore, we find the trial court should have further reviewed the State's strike of Juror 117.

Because we find the trial court improperly denied Stewart's *Batson* motion, we reverse and remand for a new trial.

## II. Remaining Issues

Stewart argues the trial court erred in overruling his objection and failing to correct the State's remarks to the jury that use of a deadly weapon implied malice because the jury was charged with the lesser-included offenses of murder and self-defense. Stewart also argues the trial court erred in allowing the State to enter unfairly prejudicial character evidence. Because we find the trial court erred in denying Stewart's *Batson* motion and reverse and remand on that issue, the court need not consider Stewart's remaining issues. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court need not address remaining issues when resolution of a prior issue is dispositive).

## CONCLUSION

Accordingly, we find the trial court erred in denying Stewart's *Batson* motion and reverse and remand this case for a new trial.

**REVERSED AND REMANDED.**

LOCKEMY and McDONALD, JJ., concur.

---

race-neutral reason for striking a juror. *See Haigler,* 334 S.C. at 632, 515 S.E.2d at 92 (finding unemployment is a race-neutral reason for a strike).